[S. F. No. 88.    Department Two.—May 14, 1896.]

ASA E. HOVEY, RESPONDENT, *v.* WILLIAM B. BRAD-
BURY, APPELLANT.

TRUST — ACKNOWLEDGMENT — NOTICE OF REPUDIATION — STATUTE OF LIM-
ITATIONS—FAILURE TO INSIST UPON ACCOUNTING—LACHES.—Where
the owner of stock in a corporation, upon departing from the state,
transferred the stock in trust to an intimate friend, that he might
represent it for him, and vote it at corporate elections, and there were
express acknowledgments of the trust upon each failure to account for
dividends upon the stock, with a promise to account therefor, and no
repudiation of the trust was brought home to the knowledge of the
beneficiary, the statute of limitations was not set in motion; nor would
the mere failure of the beneficiary to insist upon a strict accounting of
dividends for a period of eight years during the lifetime of his friend
constitute such laches as would bar the enforcement of the trust against
his representative.

ID.—ATTACHMENT SUIT AGAINST TRUSTEE—PLEDGE — INTERPLEADER—
JUDGMENTS—PARTIES—BENEFICIARY NOT ESTOPPED.—Neither a judg-
ment in an attachment suit against the trustee, in which all the stock

standing in his name was attached by his creditor, nor another judg-
ment in an action of interpleader brought by the administrator of a
pledgee of such stock, with whom it had been deposited upon release of
the attachment as a pledge to await the result of the attachment
suit, against the attaching creditor and the administrator of the trus-
tee, in which it was determined that the stock belonged to his estate
subject to the payment of the judgment in favor of the creditor, can
bind or estop the beneficial owner of the trust stock, who was not a
party to either suit, and had no notice thereof, nor does their existence
without his knowledge tend to show laches on his part.

ID.—LACHES, WHEN NOT IMPUTABLE TO BENEFICIARY—WANT OF NOTICE—
ABSENCE OF INJUSTICE—FAITHLESS TRUSTEE NOT AIDED.—Laches is not
imputable to a beneficiary when he has no notice or knowledge of facts
putting him upon notice of a repudiation of the trust; nor when there
is no word or act or omission on his part which has given the trustee
the right to suppose that the beneficiary had surrendered his ownership,
or led him to change his position, or imposed upon him any injustice;
nor can it be invoked to aid a faithless trustee in consummating a wrong,
nor as a check upon the right of a person to impose confidence and
trust in another.

ID.—DELAY AFTER DEATH OF TRUSTEE.—A delay of two and a half years
after the death of the trustee to enforce the trust against his adminis-
trator, is not unreasonable, nor can it raise the bar of the statute,
nor justify the claim of a stale demand.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order
denying a new trial.   F. W. LAWLER, Judge.

The facts are stated in the opinion of the court.

*T. V. & V. L. O'Brien*, for Appellant.

Plaintiff was guilty of laches, which prevent a re-
covery.   (*Green* v. *Covillaud*, 10 Cal. 331; 70 Am. Dec.
725; *Harris* v. *Hillegass*, 66 Cal. 79; *Bell* v. *Hudson*, 73
Cal. 287; *Chapman* v. *Bank of California*, 97 Cal. 159;
*Seculovich* v. *Morton*, 101 Cal. 677; 40 Am. St. Rep. 106;
*Shain* v. *Sresovich*, 104 Cal. 406; *Neffach* v. *Jones*, 20 Or.
491; 23 Am. St. Rep. 145; *Godden* v. *Kimmell*, 99 U. S.
211; *Sullivan* v. *Portland etc. R. R. Co.*, 94 U. S. 811;
*Hayward* v. *National Bank*, 96 U. S. 611; *Phillip* v. *Rog-
ers*, 12 Met. 405; *Smith* v. *Thompson*, 7 Gratt. 112; 54
Am. Dec. 126; *Hatcher* v. *Hall*, 77 Va. 578; *Barnes* v.
*Taylor*, 27 N. J. Eq. 259; *German etc. Seminary* v. *Kiefer*,
43 Mich. 111; *Bliss* v. *Prichard*, 67 Mo. 181; Angell on

Limitations, 5th ed., sec. 11.) The death of McCord, and of McClure, a subsequent pledgee of the property, who became so openly and notoriously, in the course of judicial proceedings, together with the laches of plaintiff, may be deemed to have given plaintiff notice. (Civ. Code, sec. 19; *Hecht* v. *Slaney*, 72 Cal. 367.) The judgment in *McClure* v. *Bradbury* certainly bound the estate of McCord, and should bind plaintiff. (Code Civ. Proc. sec. 1908.)

*Horace G. Platt*, for Respondent.

The evidence shows that Hovey owned four hundred and sixty-five shares of the stock of the Cable Railway Company, of which he made McCord the trustee, and McCord admitted this trust. A person is, in equity, guilty of laches such as to preclude him from obtaining relief only where he has, by his own conduct, or negligence and delay, induced or suffered another to do something, or to abstain from doing something, whereby the latter might be injured, if the person guilty of such delay should be allowed to enforce his rights, notwithstanding the negligence and delay. The doctrine was never intended to protect the fraudulent, but to shield the innocent. (*Ex-Mission etc. Co.* v. *Flash*, 97 Cal. 610; *McQuiddy* v. *Ware*, 20 Wall. 19; 1 Perry on Trusts, sec. 230; 2 Perry on Trusts, sec. 850; *Duff* v. *Duff*, 71 Cal. 530–34; Lewin on Trusts, *870; *Butler* v. *Hyland*, 89 Cal. 575; *Wood* v. *Perkins*, 57 Fed. Rep. 258.) Hovey was not barred by the judgments in the cases of *Schmitt* v. *McCord*, and *McClure* v. *Bradbury*, as he knew nothing of them, and was not a party to them.

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

Plaintiff pleaded that he was the owner of four hundred and sixty-five shares of the capital stock of the Cable Railway Company; that he intrusted this stock to James McCord, who held it as his trustee until his

death, after which it passed into the hands of defendant as the personal representative of McCord.    He asked a judgment declaring the trust, and decreeing an accounting of the dividends received upon the stock.    No demurrer was interposed.    Defendant for answer made denial; set up by way of estoppel judgments in certain actions involving and affecting the title to the stock, and pleaded the statute of limitations and stale claim.

The principal defense and chief contention of appellant is the laches of respondent.

The following facts were established upon the trial without substantial controversy: Hovey, while living in San Francisco, was the inventor and owner of certain valuable patent rights.    These rights were transferred to the Hovey Patent Right Company; and for them Hovey was to receive one-seventh of the capital stock of that corporation.    The Cable Railway Company succeeded to the interests of the Hovey Patent Right Company under an agreement whereby Hovey was to receive four hundred and sixty-five shares of the stock of the former corporation.    Before this stock was issued to him Hovey moved to Chicago, where he continued to reside with his family.    He and McCord were intimate friends, and, when he left, he confided all of his interests to McCord, in the implicit trust and upon the express understanding that McCord would use his best efforts in managing and protecting them.    Thus in time, and under this agreement, Hovey's four hundred and sixty-five shares of stock were issued to and in the name of McCord.    Hovey knew that McCord so held the stock, but was satisfied because of his faith in McCord, and because of the advice of some of his fellow-stockholders that he should leave the stock in the hands of some trustworthy friend in California, who might vote it in case of a contest for corporate control.    It was in 1881 that Hovey moved to Chicago.    In 1884 McCord visited him there; again in 1886, and still again in 1888.    Upon each of these visits McCord spoke of Hovey's stock, told him that it had earned dividends, the exact amounts

of which he did not remember, and promised at each visit to forward a full statement of account upon his return to California. He did not do so. In 1889 McCord died, and in 1891 Hovey, who after McCord's death had written to California about his property, with inconclusive results, commenced his action.

That McCord held Hovey's stock under these circumstances, the evidence does not permit us to doubt. Besides Hovey's testimony there is that of Maurice Schmitt, J. L. Schmitt, and Robert F. Morrow, fellow incorporators with Hovey and McCord, who fully corroborate plaintiff, and who separately bear evidence to admissions made by McCord as to the nature and terms of his trusteeship. It is beyond peradventure from all this uncontradicted evidence that McCord, during his lifetime, fully and repeatedly recognized his obligations to plaintiff.

While Hovey was thus living in Chicago, two actions were commenced against McCord. To neither of these was Hovey a party, nor does it appear that he ever had the slightest knowledge of either of them. One, the case of *Schmitt* v. *McCord*, was an action to recover three thousand dollars in which nine hundred and thirty shares of the cable company's stock, standing in the name of McCord, and including the Hovey four hundred and sixty-five shares, were attached. This attachment, by agreement of the parties, was released, and the stock deposited with one McClure, in pledge to await the result of the action. Thereafter McClure died, and his administrator commenced the second action in interpleader to have the rights of the McCord estate (McCord also having died) and of the Schmitts to the stock settled and determined. By this action the stock was decreed to belong to the McCord estate, subject to the payment of the Schmitt judgment.

The judgments in these actions manifestly present no estoppel against plaintiff's claim. He was not a party to them, nor charged with notice of them. Nor do they present any circumstance of laches upon the part of

plaintiff.    No act or omission of his induced McCord to
do or refrain from doing anything in connection with
them.    Hovey was in entire ignorance of the litigation,
and McCord let him remain so.    There is no doubt that
the conduct of McCord in this matter amounted in law
to a repudiation of his trust.    But before such repudi-
ation can operate to set in motion the statute of limita-
tions, or to raise the bar of laches, the repudiation must
be clearly and unequivocally brought to the knowledge
of the *cestui que trust*.    Laches is imputable to him only
when he fails to act after knowledge of repudiation.
But in this case the facts were never made known to
Hovey.

Nor, when we come to view plaintiff's conduct gener-
ally, can there be seen any act or omission upon his part
which would justify so stern a treatment of his claim as
its rejection under the doctrine of laches.    That doc-
trine, as has been said, is neither technical nor arbitrary.
It is not designed to punish a plaintiff.    It can be in-
voked only where to allow the claim would be, because
of the claimant's own acts, to permit an unwarranted
injustice.    It looks to the peace of society, and not to
the punishment of the claimant, even if he has been
negligent.    Whether or not the doctrine applies depends
and must depend, therefore, upon the circumstances of
each case.    It is usually applied where a plaintiff, with
knowledge that his rights have been invaded, or his
trust repudiated, has submitted to unconscionable delay,
during which other rights have arisen, founded some-
what upon his silence and acquiescence.    But it is
never permitted to be invoked merely to aid a faithless
trustee in consummating his wrong.    Nor was it ever
designed to be a check upon the right of a person to
impose confidence and trust in another.    It is well said,
in the case of *Lindsay Petroleum Co.* v. *Hurd*, L. R. 5
P. C., 221, 239:    "Where it would be practically un-
just to give a remedy, either because the party has,
by his conduct, done that which might fairly be re-
garded as equivalent to a waiver of it, or where by his

conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases lapse of time and delay are most material. . . . . Two circumstances always important in such cases are the length of the delay, and the nature of the acts done during the interval, which might affect either party, and cause a balance of justice or injustice, in taking one course or the other, so far as relates to the remedy."

When we come to consider the conduct of the plaintiff in this case, we find that he permitted McCord to take the stock in his, McCord's, own name. A third person dealing with McCord upon the faith of his apparent ownership of the stock, would undoubtedly be protected against any claims of Hovey, but no rights of third persons are here involved. Plaintiff also permitted McCord to retain the stock after his repeated failure to account to him for its dividends, but during all of this time it is to be remembered that McCord never repudiated the trust, and that plaintiff had, and continued to have, the utmost confidence in his fidelity and integrity. They were intimate friends. McCord's failures to account did not amount to a repudiation of the trust, for each failure was followed by an express acknowledgment of the trust, an admission of his fault, and a promise to repair it. The years which elapsed before plaintiff finally demanded, through the courts, an accounting were not unreasonable in view of the relations which existed between him and his trustee. The negligence of McCord in accounting, and his failure to turn over the dividends, injured no one but the plaintiff, and it was an injury which he certainly had the right to overlook, without exposing himself to the charge that he was justifying McCord in treating the property as his own. By no word, or act, or omission of plaintiff was McCord given any right, even the slightest, to suppose that Hovey had surrendered into his absolute ownership the property which he held in trust. He did

nothing to induce McCord to think that the stock was his, nothing to lead McCord to change his position in the slightest degree. His mere forbearance to call the trustee to a strict account could not have been taken advantage of by McCord in his lifetime, and cannot avail his representative after his death. Moreover, it is to be borne in mind that the conduct of the plaintiff is to be considered in the light of the fact that McCord had never repudiated the trust, or done any act within the knowledge of Hovey which amounted to a repudiation. It was only after McCord's death, and his failure to obtain any satisfactory statement from his relatives and representatives of the condition of the trust, that he was first put upon notice of repudiation. Within two and one-half years after McCord's death this action was instituted. Such delay, as explained by the evidence, was not unreasonable, and, indeed, if unexplained at all, would not raise the bar of the statute nor justify the claim of a stale demand.

The judgment and order appealed from are affirmed.

TEMPLE, J , and McFARLAND, J., concurred.

Hearing in Bank denied.