[Civ. No. 5897. Fourth Dist. Aug. 4, 1959.]

WALTER W. SCOTT, JR., Individually and as Executor, etc., et al., Appellants, v. FAYE M. SCOTT, Respondent.

White & Froehlich and Charles W. Froehlich, Jr., for Appellants.

Davies & Burch and Robert B. Burch, Jr., for Respondent.

MUSSELL, Acting P. J.—This is an action for specific performance of a contract and in the alternative, for damages for breach thereof. Trial was had by the court sitting without a jury and plaintiffs appeal from the judgment for defendant denying plaintiffs' prayer both for specific performance and damages.

There is no dispute as to the following material facts. Walter W. Scott died on May 18, 1948. He was survived by a son, Walter W. Scott, Jr.; a daughter, Patricia Jean Scott (then a minor; now Patricia Scott Farrington); and Lulu Mae Scott, mother of Walter W. Scott, Jr., and Patricia Jean Scott. Also surviving was Faye M. Scott, the second wife of decedent.

Walter W. Scott, Jr., was appointed executor of his father's will on June 11, 1948. The property claimed by the executor as being in the estate consisted primarily of two hotels, the San Carlos Hotel in Monterey and the Riviera Apartments in San Diego. Faye M. Scott contended that these hotels had been held in joint tenancy and hence were not in the estate but were her sole property. Actions to resolve this dispute were initiated by the executor and by Faye M. Scott. This controversy was resolved by a ''Compromise Agreement,'' dated July 17, 1950. It was signed by Walter W. Scott, Jr., individually and as executor; by Lulu Mae Scott, as the mother and natural guardian of Patricia Jean Scott, a minor; and by Faye M. Scott. The compromise agreement provided for the transfer of the real properties in question to Faye M. Scott in return for two notes in the total sum of $80,000 and payable over a long period of time to Walter W. Scott, Jr., individually, and Lulu Mae Scott as guardian of the estate of Patricia Jean Scott, a minor. All actions involving title to

the properties have been determined; title thereto has been transferred to Faye M. Scott; and the said notes have been transferred to Walter W. Scott, Jr., and Patricia Scott Farrington, all as agreed. The two promissory notes were secured by a second trust deed on the Riviera Apartments and by chattel mortgage on the furniture and furnishings on the Riviera Apartments. Faye M. Scott further agreed to pay all federal estate taxes which may become due by reason of the death of Walter W. Scott; all California inheritance taxes which may become due and payable by reason of the real and personal properties comprising the San Carlos Hotel in Monterey and the Riviera Apartments in San Diego, and all federal and state income taxes which may become due or payable by reason of the operation of the Riviera Apartments in San Diego and the San Carlos Hotel in Monterey, and agreed to hold Walter W. Scott, Jr., as executor of the estate of Walter W. Scott, individually, and Patricia Jean Scott harmless from the payment of any of such taxes.

In paragraph eleven of the agreement it is provided: "Walter W. Scott, Jr., as executor of the estate of Walter W. Scott, deceased, and individually, and Lulu Mae Scott, as guardian of the estate of Patricia Jean Scott, a minor, hereby waive all accountings by and payments from Walter W. Scott in the operation of the San Carlos Hotel and Riviera Apartments.

Paragraph twelve of the agreement provides: "The parties hereto agree to execute any instruments or documents necessary to carry out the terms of this agreement and further agree to execute escrow instructions to facilitate the completion of the provisions herein contained."

Walter W. Scott, Jr., and Faye M. Scott operated on the basis of a fiscal year starting December 1 and ending on November 30. Two taxing periods are here involved—the portion of the fiscal year ending with Walter W. Scott's death from December 1, 1947, to May 18, 1948, and the balance of the year 1948 from May 19, 1948, to December 31, 1948. These periods will be described hereinafter as the 1947 and 1948 taxing periods respectively.

Walter W. Scott, Jr., as executor, filed no income tax returns until 1955. Meanwhile, in the year 1953, both the federal and state taxing authorities made independent investigations and assessed income tax, interest and penalties as follows: Federal income tax upon income derived from the two hotel properties for the 1947 taxing period were assessed

on April 25, 1953, in the sum of $935.29, which included $675, principal; $260.29, interest and penalty. Scott, as executor, paid $116.50 of this amount on the theory, not disproved by the evidence, that this is a portion of the tax attributable to income other than from the hotels.

California state income taxes upon the same income for the 1947 taxing period were assessed November 30, 1953, in the total sum of $134.29, made up of $75, principal; $37.50, penalty; and $21.79, interest. Nothing has been paid on this assessment and interest at the rate of 6 per cent per annum accrues on the original assesment amount from the date of the assessment.

Federal income taxes upon income from the two hotel properties for the 1948 taxing period were assessed on April 25, 1953, in the sum of $13,629.04, made up of principal in the sum of $8,656.45; penalty of $2,164.11; and interest of $2,808.48. The original principal amount was paid by Faye M. Scott but the balance of penalty, interest, and interest on penalty remains to be paid (which, as of January 28, 1957, amounted to $6,087.28, with interest accruing from April 25, 1953, at 6 per cent per annum.

State income tax upon the same income for the 1948 taxing period resulted in an assessment on November 30, 1953, of $1,808.45, made up of $1,010, principal, $505.00, penalty; and $293.45, interest. None of these amounts has been paid and the interest on them at 6 per cent per annum accrues from November 30, 1953.

The trial court found that it was the intention of the parties on entering into said compromise agreement, and the agreement was interpreted to mean, that the executor would prepare and file timely tax returns covering the taxes in question and that the obligation of the defendant to pay a pro rata share of said taxes was contingent upon the filing of returns by the executor. The court further found that the obligation of the executor to file tax returns existed on July 17, 1950, the date of the filing of the compromise agreement; that he failed and neglected to file the said tax returns and that this failure was due to his neglect of duty; that by reason of his neglect and failure to file returns the federal and California taxing authorities assessed penalties and interest. The court also found that plaintiffs had been guilty of laches and unreasonable delay in bringing the action and that so much time now elapsed that it is impossible to ascertain the pro rata share of said taxes which was to be paid by defendant

and to obtain a waiver of penalties and interest. The court then found that the plaintiffs were not entitled to recover from the defendant because of the failure of the executor to file tax returns and that plaintiffs were estopped by reason of their own conduct from recovery from the defendant; that the plaintiffs were guilty of laches and unreasonable delay such as would preclude their recovery from defendant; and that plaintiffs' cause of action was barred by the statute of limitations. Plaintiffs appeal from the judgment then entered for defendant and against the plaintiffs.

■ The finding that the plaintiffs' cause of action was barred by the statute of limitations is not supported by the record. The defense of the statute of limitations is based on the four-year statute. The complaint herein was filed on December 4, 1956, and the defendant's duty to pay the taxes accrued when they were assessed by the taxing authorities in 1953, well within the four-year limitation. ■ The defense of laches requires more than mere delay. It must be a delay that is disadvantageous to the defendant and is analogous to the statute of limitations. (18 Cal.Jur.2d, Equity, p. 202, §§ 36, 37.) ■ This doctrine can be invoked only when it is held the claim would be, because of the claimant's own acts, to permit an unwarranted injustice. ■ It is usually applied where a plaintiff, with knowledge that his rights have been invaded, or his trust repudiated, has submitted to unconscionable delay, during which other rights have arisen, founded somewhat on his silence and acquiescence. (*Hovey* v. *Bradbury*, 112 Cal. 620, 625 [44 P. 1077].) ■ It does not appear from the record that Faye M. Scott changed her position by reason of delay in bringing the present action nor does it appear from the record that it is impossible to ascertain the pro rata share of the taxes which should be paid by the defendant.

■ The record shows that Faye M. Scott agreed to pay and did pay the estate taxes. She also agreed to pay the estate income taxes which were due to the operation of the hotel. She has paid the federal income taxes for the years 1948 and subsequent thereto, but has not paid the federal income tax for the year 1947 or the state income tax for the years 1947 and 1948. Her duty to pay these taxes arose when they were assesed in 1953. The compromise agreement supports the conclusion that the parties contemplated that the executor should file the income tax returns, since, under the laws applicable at the time the agreement was entered into,

the duty rested on the executor to file tax returns on estate income. (Int. Rev. Code, § 6012 (b) (1) ; Rev. & Tax. Code, § 18405.) Therefore, plaintiff Walter W. Scott, Jr., should be charged with the penalties due to his late filing of returns. He should be required to pay all penalties and interest accruing up to the date of the assessment in 1953. Defendant should be required to pay the principal amount of the assessment due to the income from the hotels involved, plus any penalty or interest occasioned by her failure to pay these sums after the assessment was made in 1953. The agreement involved is silent as to the duty of the executor to file returns and the filing thereof was not made a condition precedent qualifying defendant's promise to pay the principal of the tax attributable to the operation of the hotel.

Since the judgment failed to require defendant to pay any of the taxes involved, it must be and is reversed.

Shepard, J., concurred.