[Civ. No. 18798. First Dist., Div. One. July 15, 1960.]

VALENTINO FRABOTTA et al., Appellants, v. ANTHONY ALENCASTRE et al., Respondents.

────────

*Assigned by Chairman of Judicial Council.

David N. Bortin for Appellants.

Weinstock, Anderson, Maloney & Chase and Peter W. Fisher for Respondents.

PAULSEN, J. pro tem.*—Appeal by plaintiffs from a judgment refusing to grant a mandatory injunction and to quiet title.

Respondent Integrated Housing Company was the owner of an unimproved area in the city of Concord, designated as Tract 2352. It is bounded on the west by Cowell Road, a public thoroughfare running approximately north and south. Appellants are the owners of land and homes situated to the east of the southerly portion of the tract. They owned a 20-foot, nonexclusive easement running along the northerly boundary line of their property and extending westerly over the tract to the middle of Cowell Road, giving them complete and unobstructed access thereto. The easement was a matter of public record.

Defendant Plumleigh Development Company was a construction company organized and controlled by Integrated.

In May, 1956, the tract was subdivided and Plumleigh commenced to lay out, grade and improve streets. Plaintiffs' noticed that their easement was being obstructed and protested to Mr. Plumleigh, who was in charge of the work and who represented both the construction company and Integrated.

*Assigned by Chairman of Judicial Council.

Plaintiffs were willing to work out an agreement that would be advantageous to all parties, if that could be done, but they insisted upon preservation of their right of direct access to Cowell Road and to compensation for the temporary obstruction of the easement and for any future curtailment of their rights. Negotiations continued during the winter and spring of 1956-1957 while the work on the subdivision went on. The easement was dusty in summer and sometimes muddy during the rainy season. Mr. Plumleigh tentatively offered at one time to pave a sufficient portion of it to permit travel and to compensate plaintiffs for the remainder if the cost would not be too great. On the assumption that Integrated would perform their part of such an agreement if acceptable to plaintiffs, defendant North American Title Company, acting for the tract owners, prepared quitclaim deeds and presented them to plaintiffs for signature. It is admitted that no actual agreement had been or ever was reached and plaintiffs refused to execute the deeds.

As construction progressed, the easement was further obstructed. Houses were built so close to it that any improvement of the rear portion of the lots would completely block it.

The 10 individual defendants, who were prospective purchasers of lots, moved into houses and paid rent pending delivery of deeds and title insurance policies. Defendant title company had shortly before that time insured the title of one of the plaintiffs, including his easement rights, and as already stated, had tendered deeds to plaintiffs. Notwithstanding this actual knowledge of the facts, the title company issued policies to the purchasers of lots showing title in fee free and clear of the easement. That action was based on an agreement by Integrated to hold the title company harmless. Integrated then lost interest in the negotiations with plaintiffs and later was declared bankrupt, and some of its corporate officers were convicted of falsifying FHA documents.

After the purchasers of lots received their deeds and insurance policies, improvements were made on some lots. A couple of trees were planted and a barbecue pit and small retaining wall were put in.

When plaintiffs found that Integrated had lost interest in negotiations, they visited the purchasers of lots and discussed the problem. The purchasers were content to rely on their title insurance. Plaintiffs then employed an attorney and shortly thereafter this action was commenced.

It was stipulated that ''the plaintiffs are among the owners

of record of the non-exclusive easement . . . and that they were, immediately prior to the placement of the hereinafter mentioned obstructions, entitled to possession and unencumbered use thereof''; and that the trial be limited to certain special defenses hereafter discussed.

The principal defense was ''balancing of the conveniences.'' The availability of such a defense was recognized in *Wright* v. *Best*, 19 Cal.2d 368 [121 P.2d 702], but the application of it has presented questions of great difficulty.

The cases discussing the doctrine, as applied in this state, are reviewed at length in *Christensen* v. *Tucker*, 114 Cal.App. 2d 554 [250 P.2d 660], and the requirements of such a defense are there fully set forth. It was pointed out (p. 562) that ''Most of the legal writers approve the concept that some such concept as balancing conveniences or hardships in connection with the granting or denying of mandatory injunctions in trespass cases should exist, but most recommend that it should not be applied where a substantial right of the plaintiff is involved unless the disproportionate hardship between the plaintiff and the defendant is very great, and unless the encroachment was an innocent one.'' It was further observed that ''doubtful cases should be decided in favor of the plaintiff.''

The court found that the purchasers had no actual notice. The evidence is sufficient to support this finding as far as it relates to the time prior to the date of purchase; it is not supported as to the time after purchase. It was also found that the purchasers had no constructive notice, even though the parties had stipulated to the contrary, and the evidence of recordation was undisputed.

It was also found that granting ''the relief prayed for . . . would thus result in extreme hardship and economic loss, while denial of the relief . . . would bring no actual advantage [*sic*] to plaintiffs.''

■■■ The purchasers contended at all times that they had a right to improve the lots and obstruct the easement because their titles had been insured. Appellants repeatedly offered to show that the purchasers had protected themselves against loss by insuring and would, if the injunction were granted, be in a position to recover in full from defendant title company; that under the circumstances the purchasers would suffer little or no financial loss. Objections to these offers were sustained on the ground that insurance coverage against loss is not admissible and that sums recoverable from a col-

lateral source cannot be shown to diminish the amount of an award of damages. (*Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563 [74 P. 147]; *Peri* v. *Los Angeles Junction Ry. Co.*, 22 Cal.2d 111 [137 P.2d 441], *Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198]; *Gersick* v. *Shilling*, 97 Cal.App.2d 641 [218 P.2d 583].)

The purchasers are relying on the equitable doctrine of balancing conveniences and should not be permitted to subvert the principles of equity by invoking the rules announced in the cited cases to deprive plaintiffs of their property rights. Any purchaser of property knows that titles may be defective. These purchasers paid rent until they received title insurance. They relied on that insurance when they completed the obstruction of the easement. Presumably they are fully protected against financial hardship and can recover on their policies or in actions for damages against the insurer who misled them. In all probability they will suffer little or no hardship. They had constructive notice of plaintiffs' right before they purchased and actual notice of plaintiffs' claims thereafter and while they were improving their lots. To hold that evidence of insurance is inadmissible under these circumstances is to permit the guilty party, the title company, which acted with full knowledge of all the facts to escape all liability. Such a rule would open the door to a new type of fraud against which property owners would have no protection and in which offenders could operate with little fear of loss.

Defendants' appraiser testified to the value of the 10 lots at the time of purchase and to the value if the injunction were granted. On the basis of that testimony, the court found that the purchasers would suffer loss of approximately $30,000. On cross-examination the appraiser admitted that in fixing the value at the time of purchase he had assumed that the lots were free and clear of the easement. The issuance of title policies did not extinguish the easement although it may have had a bearing on the question of market value thereafter. The evidence, as presented, did not support the finding.

The court found that the plaintiffs were guilty of laches in that they had unreasonably delayed in bringing suit "with knowledge that said defendants were improving their lots and homes, all to the prejudice of said defendants." At all times prior to the issuance of the title policies appellants were negotiating in good faith. They could not, as reasonable persons, expect any reputable title company, especially one which had recently issued title insurance to one of the appel-

lants recognizing his rights in the easement, to insure other titles free and clear of the same easement. As soon as they discovered the facts, they called on the purchasers and discussed the problem, making their claims known to them. When the purchasers indicated that they would proceed to obstruct the easement further in reliance on their title insurance, appellants employed an attorney and on July 30, 1957, this suit was commenced.

 "The defense of laches requires more than mere delay . . . [It] is usually applied where a plaintiff, with knowledge that his rights have been invaded . . . has submitted to unconscionable delay, during which other rights have arisen, founded somewhat on his silence and acquiescence." (*Scott* v. *Scott,* 172 Cal.App.2d 588 [342 P.2d 6] ; *Hovey* v. *Bradbury,* 112 Cal. 620 [44 P. 1077].) There is no evidence of such delay, or silence or acquiescence, or that any defendant relied on the conduct of appellants. To the contrary, the purchasers relied upon their title insurance although they knew of appellants' claims and had constructive notice of their title. The other defendants acted with full knowledge and in ruthless disregard of appellants' rights, after having lulled them into a temporary sense of security. The finding is in direct conflict with the undisputed facts.

 The court also found that appellants had been provided with an alternative route as good or better than the easement; that they had not been injured in any way; and that their use of the easement would be adverse to the public interest. When the work on the tract was finished, two new streets had been provided leading north to Plumleigh Lane and then west to a point on Cowell Road north of the point where it is now intersected by the easement. If accessible to appellants, these routes would give them indirect access to Cowell Road but would require them to travel several blocks farther. There was a dispute as to whether these streets actually extended far enough to the south to connect completely with the unobstructed part of the easement and always provide complete and unlimited access. Banks had refused, on account of this uncertainty, to grant loans to some of the plaintiffs. Respondents' witnesses admitted that the city would have a right to block those streets but could not legally block plaintiffs' direct access to Cowell Road. One of defendants' appraisers also admitted that plaintiffs' land was potential subdivision property and would be benefited by having the easement. The court viewed the tract but while this would

show that the alternative route was physically open at the time, it could not prove that appellants would always have a legal right of access by those routes. The findings on these points are unsupported.

■ The city planning engineer, called by defendants, testified that Cowell Road would eventually be converted into a freeway; that the city planned new developments in the area and for these reasons the future use of the easement would not be in the public interest. In our opinion the future plans of the state and the city can not be considered in applying the doctrine of balance of conveniences for the purpose of depriving a property owner of his title. Appellants have a vested right to direct access to Cowell Road. If in time the public interest requires it, the right can be acquired by purchase or condemnation. The theory of respondents, if carried into effect, would give private individuals a right of eminent domain without even requiring the payment of just compensation.

The court gave judgment in favor of North American Title Company, Integrated Housing Company, and Plumleigh Development Company on the ground that these defendants had no present title to the easement area and had no power to remove obstructions. Bearing in mind that the action was for injunctive relief and to quiet title, these judgments were correct and are affirmed. As to all the other defendants, the individual purchasers, the judgment is reversed, and the trial court is directed to issue a peremptory writ of injunction as prayed for, and in accordance with the views herein expressed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied August 5, 1960, and the opinion and judgment were modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied September 7, 1960.