[Civ. No. 6594. Third Dist.—July 3, 1941.]

ROGER W. TRUESDAIL, Appellant, v. LAWRENCE W. LEWIS et al., Respondents.

Snow & Forster and Morton L. Barker for Appellant.

Stick & Moerdyke and S. Arion Lewis for Respondents.

THOMPSON, J.—The plaintiff has appealed from a judgment which was entered against him pursuant to an order sustaining a demurrer to the third amended complaint without leave to amend the pleading.

This is a suit to quiet title to 625 shares of the common stock of California Yeast Products Corporation, Ltd., and to declare that the defendant, Lawrence W. Lewis, holds the stock in trust for plaintiff. The third amended complaint alleges that plaintiff is a research scientist and chemist who has had thirteen years of experience in that work; that the California Yeast Products Corporation, Ltd., was incorporated April 18, 1931, with 5,000 shares of common stock of the par value of $1.00 each; that its principal place of business was Los Angeles and that the defendant, Lawrence W. Lewis, was one of the incorporators of the company, a member of the board of directors, president and general manager thereof; that he was virtually the *alter ego* of the corporation which was engaged in conducting, improving and producing a yeast enterprise, together with the by-products thereof; that on June 18, 1931, the corporation was duly authorized to issue and sell 5,000 shares of the common stock of the company at $1.00 per share, and that 4,998 of said shares were issued to the said Lewis, who ever since said time has been and now is the record owner and holder thereof; that the defendant Lewis agreed with plaintiff that if he would conduct all scientific and chemical experiments for the improvement and production of by-products and better methods of handling the yeast and procure a $15,000 loan for the corporation he would be given one-eighth of the common stock of the corporation and become a share-holder thereof "as soon as the shares were issued"; that the said Lewis told plaintiff his reports on such products would have far greater weight with the public if his name did not at first appear as a stockholder of the company, and that his shares of the stock would be issued to Lewis, who would hold them for plaintiff and transfer them to him at a later time, which was agreed upon; that in reliance upon that agreement plaintiff continuously performed services of that nature until the latter part of 1934 and succeeded in procuring the $15,000 loan mentioned; that on November 5, 1931, Mr. Lewis signed a written agreement to transfer to the plaintiff 50 shares of the stock as soon as it was issued by permission of the Corporation Commissioner; that the plaintiff often demanded of Lewis the issuance and delivery of his capital stock, but that said defendant fraudulently told him the stock had never been issued; that in May, 1936, the said Lewis falsely and fraudulently informed the plaintiff that the com-

pany and all of its assets had been sold for $85,000, but that there were a large number of debts of the company which must be first paid, after which the plaintiff's net share in the assets of the corporation would amount to only $2,500, upon which Lewis was compelled to pay $500 in taxes; that relying upon those statements the plaintiff accepted the check of Mr. Lewis for $2,000 and gave him a receipt in full for his entire interest in the corporation; that all of the said statements of Lewis were false and fraudulent as he well knew; that only a portion of the assets of the company had been sold and that "the stock owned by plaintiff and standing of record in the name of defendant Lewis was not sold by said defendant, but is still held by him." Thereupon the prayer asks for a decree determining that plaintiff is the owner of 625 shares of the common stock of the company in the hands of Lawrence W. Lewis; that he be declared to hold the same in trust for plaintiff and that he be required to transfer the stock to plaintiff as the owner thereof.

Many other facts and circumstances of the transaction are alleged, which we think are not necessary to relate in determining this appeal. The complaint is involved and lengthy. Probably many immaterial facts have been alleged. Primarily it is a suit to quiet title to 625 shares of stock, which are alleged to be held by Mr. Lewis in trust for the plaintiff. Incidentally, the complaint charges that Lewis procured the plaintiff's settlement of his entire claim of interest in the company, represented by his 625 shares of stock, by means of fraud. If that be true, the purported settlement of plaintiff's claim to an interest in the stock and company is absolutely void.

█ We are of the opinion the third amended complaint states a good cause of action under section 738 of the Code of Civil Procedure to quiet title to 625 shares of the common stock of the California Yeast Products Corporation, Ltd., alleged to be held in trust by the defendant, Lawrence W. Lewis. (*McAlvay* v. *Consumers' Salt Co.*, 112 Cal. App. 383 [297 Pac. 135].) The facts of the McAlvay case were quite similar on principle to those of the present case. In that case V. E. Stockwell was a stockholder and president of the Consumers' Salt Company. Two hundred and twenty-five thousand shares of the stock were issued to him and stood in his name. The plaintiff claimed title to the stock by virtue of an execution

sale thereof. Stockwell claimed he was the owner of the stock. The stock had been purchased in the name of Mrs. Greenleaf, the mother-in-law of Stockwell. Plaintiff brought suit to quiet title to the stock. The court held that while the stock was originally purchased in the name of Mrs. Greenleaf she merely held it in trust for her son-in-law who was the real owner, and that the plaintiff acquired title thereto by virtue of the execution sale. Judgment was rendered quieting title to the stock in plaintiff. On appeal that judgment was affirmed.

The complaint in the present suit contains all the necessary allegations to constitute a good cause of action to quiet title to personal property. The allegations to the effect that Lewis merely held the stock in trust for the plaintiff, and that he procured a purported relinquishment of plaintiff's interest therein by means of fraud are merely incidental to the suit to quiet title to the stock. The chief issue is whether Lewis or the plaintiff owns the 625 shares of stock which stand in Lewis' name. This is not a suit to rescind the purported settlement of plaintiff's interest in the stock. It is alleged that settlement was procured by fraud and that it is therefore void. The plaintiff neither sold nor transferred his stock to Lewis. ▮ It is not necessary that the plaintiff should tender to Lewis the $2,000 which he received in that transaction as a prerequisite to the maintenance of this suit to quiet title. Lewis is not prejudiced by failure to return the $2,000. In the final determination of the suit the court may properly quiet title to the stock in plaintiff, subject to his paying Lewis the money which he received on a void transaction.

▮ All of the necessary elements constituting a voluntary trust of the stock in Lewis are alleged as required by section 2221 of the Civil Code. The complaint also sufficiently alleges facts showing that Lewis fraudulently acquired and holds the stock as an involuntary trustee under sections 2223 and 2224 of the Civil Code. (12 Cal. Jur. 806, sec. 64.)

▮ The complaint does not show on its face that the action is barred by the statute of limitations. It is alleged that Lewis never did affirmatively repudiate his trust, and, upon the contrary, that when plaintiff demanded his stock he was repeatedly told that he would receive it as soon as it was issued by the corporation. It is also alleged that plaintiff did not discover the fraud with respect to the alleged sale of the

corporation assets, upon the basis of which alleged false statements the purported settlement was procured, until December 19, 1938. This suit was commenced within a few months thereafter. The rule is well established that the statute of limitations does not begin to run in the case of a voluntary trust until the defendant repudiates the trust or at least until the owner of the property has knowledge of the trustee's intention to repudiate the trust. (*Leviston* v. *Tonningsen*, 212 Cal. 656, 664 [299 Pac. 724] ; 25 Cal. Jur. 271, sec. 133.) In the case of an involuntary trust the statute of limitations begins to run, regardless of repudiation thereof, from the time when the wrongful or fraudulent acts are performed by the trustee, except that the statute is tolled as to the owner of the property until he actually acquires knowledge of the wrongful acts, or, by the exercise of reasonable care, until he is charged with such notice. (*Neilsen* v. *Neilsen*, 216 Cal. 150 [13 Pac. (2d) 715] ; 25 Cal. Jur. 274, sec. 135.) Regardless of whether the facts alleged in the present case constitute a voluntary or an involuntary trust, it does not appear that the statute of limitations bars the action.

For the foregoing reasons it does not appear from the allegations of the complaint that the action is barred by laches.

The judgment is reversed and the trial court is directed to overrule the demurrer and permit the defendants to answer the third amended complaint.

Tuttle, J., and Pullen, P. J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 28, 1941.