[Civ. No. 24447.   Second Dist., Div. One.   July 25, 1960.]

ADELE BROFFMAN et al., Appellants, v. HARRY KLASSMAN, Respondent.

118

Bertram H. Ross and Samuel Reisman for Appellants.

Diamond & Tilem and Benjamin J. Goodman for Respondent.

WOOD, P. J.—Plaintiffs appeal from a judgment of dismissal based upon an order sustaining a demurrer to the amended complaint without leave to amend.

There are two purported causes of action in the amended complaint.

The allegations of the first cause of action are, in substance, as follows: At all times mentioned in the amended complaint, defendant had some interest in the Embassy Club, a licensed poker parlor situated in Gardena, California, and was the manager of said club.. Immediately prior to October 26, 1954, defendant represented to plaintiffs, as follows: He was the owner-operator of said club; certain persons owned percentages in said club; each 1 per cent interest produced an income of $150 per month and, in October, 1954, was of a fair market value of $5,500; the purchase of percentage points in said club was equivalent to the purchase of annuities; and that defendant would attempt to obtain for plaintiffs ownership of percentages in said club. About October 26, 1954, defendant informed plaintiffs that certain percentage holders were willing to sell five percentage points in the club, and that he could procure said percentage points for plaintiffs for $27,500. In reliance upon the representations above alleged, plaintiffs paid to defendant $27,500, for the purchase price of said five percentage points, and received a document, a. copy of which is attached to the complaint, marked Exhibit "A," and made a part thereof.

Exhibit "A" attached to the amended complaint, provided, as follows:

"26 October 1954

"For good and vauable considerations and services rendered in time of need I, HARRY KLASSMAN, do hereby assign, transfer and deed an interest of five points, in that establishment known as the Embassy Club, located 15331 S. Vermont., Gardena, California, to Adele and Edwin Broffman. This interest and all benefits financially or otherwise derived from this interest shall commence upon final payment of that note for $17,500.00 (Seventeen Thousand Five Hundred Dollars) Note No. X200, executed in favor of Adele and Edwin Broffman, by HARRY KLASSMAN.

"In the event of a sale of the Embassy Club, I direct that Adele and Edwin Broffman shall receive a percentage of five percent of the total sale of the Embassy Club.

"In the event of the death or demise of HARRY KLASSMAN, Owner-Operator of the Embassy Club, I hereby direct my heirs and executors to carry out the terms of this agreement.

/s/ Harry Klassman

HARRY KLASSMAN—OWNER OPERATOR
EMBASSY CLUB

"WITNESSED:

/s/ [Name illegible] "

At the time of delivery of Exhibit "A" to plaintiffs, defendant stated that although he had received $27,500 from plaintiffs, he was giving them a document showing $17,500 in the form of a loan "in order to make the transaction exempt so far as the first $17,500 in income was concerned for plaintiffs herein and further that the additional sum of $10,000 involved could not be shown because . . . defendant . . . was using a certain amount of cash in connection with the purchase of said five percentage points for plaintiffs and that the transaction had to be handled in that way, but that despite any of the provisions of the document itself that plaintiffs were receiving a present five (5%) percent interest in said" club. Thereafter, about December 20, 1954, defendant informed plaintiffs that he could procure for them an additional 1 per cent interest in said club for $5,500. On December 20, 1954, in reliance upon defendant's representations, plaintiffs paid to defendant $5,500, as the purchase price of said 1 per cent interest in said club, and defendant delivered to plaintiffs

a document, a copy of which is attached to the amended complaint, marked Exhibit "B," and made a part thereof.

Exhibit "B" attached to the amended complaint provided, as follows:

"Dec. 20, 1954

"Received Loan of $3500 from Edwin & Adele Broffman Payable $150.00 month until paid at the rate of 6% interest.

Harry Klassman

"I Harry Klassman Direct that when this above note is paid in full that Adele & Edwin Broffman are to receive 1 point in that establishment known as the Embassy Club, 15331 So. Vermont Ave, Gardena, Calif. I hold them harmless from any debts such as taxes, liens, or bills pertaining to the Embassy Club.

"It is understood that Adele & Edwin Broffman shall have no voice in the management or policies of the Embassy Club and waive all rights except those given them by myself pertaing to the Embassy Club. In the event of a sale of the Embassy Club Edwin & Adele Broffman shall receive 1% of the total sale of the club. In The Event of my death or demise I direct my Heirs and Executors to carry out the terms of this agreement.

Harry Klassman"

At the time defendant delivered Exhibit "B" to plaintiffs, he stated that although he had received $5,500 from plaintiffs, he was giving said document to plaintiffs showing $3,500 in the form of the loan in order to make the transaction tax exempt so far as the first $3,500 in income was concerned for plaintiffs herein and further that the additional sum of $2,000 involved in the transaction could not be shown because defendant was using a certain amount in connection with the purchase of said 1 per cent interest for plaintiffs and that the transaction had to be handled in that way, but that despite any of the provisions of the document itself that plaintiffs were receiving a present 1 per cent interest in said club. After plaintiffs purchased said percentage interests in said club and received Exhibits "A" and "B," they received from defendant the following sums of money: 1954—$1,500; 1955—$10,800; 1956—$10,800; 1957—$8,100; 1958—$1,050. (Total $32,250.) At the times said sums were paid defendant represented to plaintiffs that said sums were payments of income based upon the ownership by plaintiffs of six percentage points in said club, and in connection therewith, from time to time, defendant ren-

dered to plaintiffs statements indicating the income and expenditures of the club. In the early part of 1958, plaintiffs informed defendant that they were dissatisfied with the returns that they were getting for their ownership in the club, and they demanded from defendant full data concerning the earnings of the club. Defendant refused to render an accounting, and plaintiffs, believing that they owned a 6 per cent interest as joint adventurers or limited partners in the club, filed an action in the superior court about July 15, 1958. That action was dismissed, without prejudice, prior to the commencement of the present action. In January, 1959, plaintiffs learned that there had been in existence for a long period of time a limited partnership, known as Hal-Be Company, which owns the leasehold and physical properties upon which the club is operated; that said limited partnership receives 55 per cent of the net profits from the operation of the club; that defendant has only a 45 per cent interest in the profits of the club and is the operator and license holder for said club; that he has no right to sell any interest in said limited partnership; and that said limited partners have agreed among themselves that no new limited partners may be admitted without the consent of other limited partners. Plaintiffs are not parties to that agreement. Plaintiffs did not know of the existence of said limited partnership and would not have paid the sum of $33,000 (the total amount theretofore alleged plaintiffs had paid to defendant) if they did not believe that they were becoming joint adventurers and percentage holders in said club. Defendant lulled plaintiffs into a false sense of security by giving them occasional financial reports of the operation of the club and by making the payments as set forth above. It was not until plaintiffs employed their present counsel, who examined into the matter, that they ascertained, for the first time, that they had purchased nothing from defendant, but they had believed defendant's representations, which were in all respects false, fraudulent and untrue.

The first cause of action alleges further, that an actual controversy exists between plaintiffs and defendant as to their rights and the duties and liabilities of defendant under Exhibits "A" and "B" in the following particulars:

Plaintiffs contend that they are entitled to an accounting for 6 per cent of the net profits from the operation of the Embassy Club; defendant denies that plaintiffs are entitled "to this." Plaintiffs contend that they are entitled to the same rights under Exhibits "A" and "B" "as against the

interests of . . . [defendant] in his operating agreement with the HAL-BE COMPANY [the limited partnership], as though plaintiffs actually got what they bargained for from . . . defendant''; that they are entitled to 6 per cent of the profits of the Embassy Club payable out of whatever interest defendant owns in said club. Defendant contends that he defrauded plaintiffs out of their money and was able to pay, under trick and device, a portion of plaintiffs' capital investment before plaintiffs could learn that they had been defrauded.

The first cause of action alleges further, as follows: It is necessary for a court to determine the rights of plaintiffs under Exhibits "A" and "B" and to determine that plaintiffs are entitled to a six percentage interest in the club and that defendant is holding said interest in trust for plaintiffs and that plaintiffs are entitled to an accounting from defendant of all earnings on their six percentage points in said club.

In the second cause of action, plaintiffs incorporate by reference all the allegations of the first cause of action except the allegations regarding the existence of a controversy between the parties; the necessity for the determination of the rights of parties under Exhibits "A" and "B"; and the necessity for a determination of those rights in the manner alleged. The second cause of action alleges further, in substance, as follows: Defendant represented to plaintiffs that the $33,000 they paid to him in October and December, 1954, was used to purchase, from other percentage holders of said club, for plaintiffs the six percentage points referred to above; said representations were false and fraudulent; defendant defrauded plaintiffs and converted and retained said $33,000 paid to him by plaintiffs; he did not purchase for plaintiffs the aforesaid six percentage points or any percentage points in said club in accordance with his aforesaid representations and agreements. Defendant, to further complete the fraud practiced on plaintiffs, caused payments to be made to plaintiffs as income over the years so that plaintiffs could not discover the facts. Defendant owns a 45 per cent interest in the net profits of the club, and he is an involuntary trustee for plaintiffs of the amounts to which plaintiffs would be entitled in the event that they had received their 6 per cent interest in the club, as represented and sold to them by defendant; that in equity the 45 per cent of net profits of said club owned by defendant should be impressed with a trust in favor of plaintiffs; and that plaintiffs should have an accounting from 1954 to date. The interest of defendant should be "surcharged" with an amount equal to that which

plaintiffs would have received had defendant acquired for them the six percentage points that he represented that he acquired for them; defendant is holding in trust for plaintiffs six percentage points in said club in and by virtue of his 45 per cent ownership thereof, and it should be decreed that plaintiffs' original $33,000 investment is held in trust by defendant out of his 45 per cent interest in said club. Defendant has informed plaintiffs that before he will pay any more money than has been paid to them, he will render himself insolvent, dispose of his interest in the club, and divest himself of assets so that plaintiffs could recover nothing from defendant.

The second cause of action alleges further, on information and belief, that defendant receives from the club, on his 45 per cent interest therein, a sum in excess of $5,000 per month, and, unless a receiver is appointed, defendant will dissipate said funds so that they may not be reached by plaintiffs, and plaintiffs will suffer irreparable loss unless a receiver is appointed to collect the 45 per cent interest in the profits of said club that are payable to defendant.

The prayer is for a judgment declaring the rights of the parties under Exhibits "A" and "B"; determining that the interest of defendant in the Embassy Club is impressed with a trust for the benefit of plaintiffs and that plaintiffs are entitled to an amount equal to a 6 per cent interest in the Embassy Club, as though they were percentage holders in the Hal-Be Company (the limited partnership); and appointing a receiver for the collection of money to which defendant may be entitled from the operation of the club.

Appellants contend that the complaint states a cause of action to impress an involuntary or constructive trust on the interest of defendant in the club. They argue to the effect that such a trust should be impressed upon defendant's interest because: the defendant, in obtaining $33,000 from plaintiffs, "represented" that the money was to be used to acquire six percentage points in the club; the defendant made payments to plaintiffs for four years and "represented" that the payments were income from the six points which he had purchased for plaintiffs; the defendant cannot now deny that he purchased the six points for plaintiffs, or deny that he is holding the points and the income therefrom in trust.

Section 2223 of the Civil Code provides: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."

Section 2224 of that code provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Plaintiffs do not contend that the amended complaint states a cause of action on any theory other than that of an involuntary or constructive trust. The question therefore is whether the amended complaint shows (pursuant to said section 2223 or section 2224) that defendant is one who "wrongfully detains a thing" for the benefit of the owner, or that defendant is one who "gains a thing by fraud, violation of a trust, or other wrongful act."

It was not alleged in the amended complaint that plaintiffs purchased any interest in the club from defendant, or that defendant purchased any interest in the club for plaintiffs, or that the plaintiffs owned any interest therein which defendant wrongfully detained from plaintiffs. It was not alleged in the amended complaint that defendant purchased any interest in the club with money which plaintiffs paid to defendant, or that defendant acquired any interest in the club after plaintiffs paid money to defendant. In other words, it does not appear from the amended complaint (1) that plaintiffs were the owners of any interest in the club (which could be detained by defendant), or (2) that defendant had gained any interest in the club by fraud, violation of a trust, or other wrongful act (which, except for fraud, etc., would have been owned by plaintiffs). It does appear from the amended complaint that "a partnership" owned the leasehold and physical property upon which the club was operated; that the partnership received 55 per cent of the profits from the club; that defendant has a 45 per cent interest in the profits of the club and he had such interest prior to the time plaintiffs paid the money to defendant; and that defendant had no right to sell any interest in the partnership. In other words, plaintiffs have made allegations to the effect that defendant could not sell any interest in the club to plaintiffs or anyone who was not a member of the partnership. It thus appears that plaintiffs do not seek to establish a trust on the theory that plaintiffs were owners of an interest in the club and that defendant was detaining that interest; or on the theory that defendant had gained an interest in the club by fraud or other wrongful act (using plaintiffs' money) and that under equity principles

it should be deemed that such interest was held in trust for the benefit of plaintiffs. On the contrary, it appears that plaintiffs are seeking to establish a trust *in defendant's interest* in the club on the theory that since he failed to perform his agreement to buy club interests, for plaintiffs, from other owners of club interests, it should be deemed that he holds a portion of his own interest in trust for the benefit of plaintiffs. It therefore appears that the allegations of the amended complaint do not show that plaintiffs' transaction with defendant comes within the involuntary trust provisions of said section 2223 or section 2224 of the Civil Code, that is, that plaintiffs owned any club interest which the defendant wrongfully or otherwise detained, or that defendant, as a result of the transaction with plaintiffs, gained any interest in the club by fraud, violation of a trust, or other unlawful act.

Furthermore, there are ambiguous, uncertain, and inconsistent allegations in the amended complaint. It was alleged therein that defendant said he would *attempt* to buy interests in the club, and that he said he *could* buy interests therein. It was also alleged that defendant could not buy interests in the club (by reason of the partnership). It was also alleged that plaintiffs had purchased nothing from defendant. The two documents signed by defendant, and attached to the amended complaint as exhibits, state in effect that portions of the $33,000 (i.e., amounts aggregating $21,000) were loans from plaintiffs to defendant, and that promissory notes were executed as evidence of the loans. Those exhibits tend to refute plaintiffs' allegations that the $33,000 was paid to defendant for use in buying club interests for plaintiffs. Those exhibits, when considered with the allegations as to the purpose in paying the money to defendant, show that there is ambiguity and uncertainty in the amended complaint, that is, as to whether the $33,000 was to be used to buy club interests for plaintiff or whether approximately two-thirds of that amount was a loan to defendant. Also, there is no allegation as to the whereabouts of the notes—whether they are held by plaintiffs, or have been assigned, or have been surrendered to the defendant. Since plaintiffs declined to amend their amended complaint, it is to be assumed that they could not clarify those allegations.

Plaintiffs do not assert that the amended complaint states a cause of action for damages for failure of defendant to comply with his agreement to buy club interests for plaintiffs.

They assert in effect that the trial judge apparently took the position that a breach of contract was alleged and that the damages to which plaintiffs would be entitled would be the return of their money under the ''out-of-pocket'' rule of section 3343 of the Civil Code. (As above shown, the plaintiffs alleged that they paid $33,000 and had received $32,500.) Said section 3343 provides that, ''One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received. . . .'' Plaintiffs state that said section is not applicable here for the reason that plaintiffs ''do not allege that a sale or purchase was ever made or consummated,'' and where there has been no actual sale there can be no recovery of such ''difference between the actual value of that with which the defrauded person parted and the actual value of that which he received.'' In view of plaintiffs' position that they do not seek recovery of damages, it is not necessary to discuss further whether a cause of action for damages has been stated.

With reference to the allegations concerning declaratory relief, it is apparent that the declaration which plaintiffs seek is a declaration that defendant holds a portion of his own interest in the club in trust for plaintiffs. In other words, under the asserted cause of action for declaratory relief the plaintiffs are asking for the same adjudication they ask for in the other purported cause of action, namely, an adjudication that a portion of defendant's interest in the club is impressed with a trust. In *Orloff* v. *Metropolitan Trust Co.*, 17 Cal. 2d 484, it was said, at page 489 [110 P.2d 396] : ''[A] judgment refusing to entertain a complaint for declaratory relief is not reviewable upon appeal except for an abuse of discretion, which is not here shown.'' In *Schessler* v. *Keck*, 125 Cal.App.2d 827 [271 P.2d 588], it was said, at page 837: ''Permission to resort to declaratory relief is a matter of sound discretion of the court. Such an action is usually unnecessary where an adequate remedy exists under some other form of action. . . .''

Plaintiffs cite *Ward* v. *Taggart*, 51 Cal.2d 736 [336 P.2d 534], and *Truesdail* v. *Lewis*, 45 Cal.App.2d 718 [115 P.2d 218]. Those cases are distinguishable from the present case in that the defendants therein *received* that which was held to be the subject matter of constructive trusts as a result of fraudulent representations of the defendants, whereas, in the present case, plaintiffs do not allege that defendant received

any interest in the club as the result of misrepresentation of defendant.

Plaintiffs stipulated, upon the hearing of the demurrer, that they could not amend and did not wish an opportunity to amend. Defendant withdrew his special demurrer.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 14, 1960.