**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEX BAKALIAN; ANAIS HAROUTUNIAN; RITA MAHDESSIAN, *Plaintiffs-Appellants*, <br><br> v. <br><br> CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI, *Defendants-Appellees*. | No. 13-55664 <br><br> D.C. No. 2:10-cv-09596-DMG-SS |
| DAVID DAVOYAN, Administrator of the Estate of Garbis Tavit Davoyan; HRAYR TURABIAN, individually on behalf of all others similarly situated, *Plaintiffs-Appellants*, <br><br> v. <br><br> REPUBLIC OF TURKEY, *Defendant*, <br><br> and <br><br> THE CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI, *Defendants-Appellees*. | No. 13-55742 <br><br> D.C. No. 2:10-cv-05636-DMG-SS |

| | |
|---|---|
| ALEX BAKALIAN; RITA MAHDESSIAN; ANAIS HAROUTUNIAN, *Plaintiffs-Appellees*, v. CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI, *Defendants-Appellants*. | No. 13-55765 D.C. No. 2:10-cv-09596-DMG-SS |

| | |
|---|---|
| DAVID DAVOYAN, Administrator of the Estate of Garbis Tavit Davoyan, Deceased; HRAYR TURABIAN, individually on behalf of all others similarly situated, *Plaintiffs-Appellees*, v. REPUBLIC OF TURKEY, *Defendant*, and THE CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI, *Defendants-Appellants*. | No. 13-55804 D.C. No. 2:10-cv-05636-DMG-SS OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted December 17, 2018
Pasadena, California

Filed August 8, 2019

Before:  Kim McLane Wardlaw, Marsha S. Berzon,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Foreign Sovereign Immunities Act / Statute of Limitations

The panel affirmed the district court's dismissal as time-barred of claims brought in 2010 against the Republic of Turkey and two Turkish national banks, seeking compensation for property taken from plaintiffs' ancestors during the Armenian Genocide, which took place from 1915 to 1923.

The court previously held unconstitutional a California statute providing that any limitations period for suits arising out of the Armenian Genocide would not expire until December 31, 2016.  Applying California law, the panel held that, in the absence of the invalidated extension statute, plaintiffs' claims, brought under the Foreign Sovereign Immunities Act, were barred by the statute of limitations for

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

claims of genocide, war crimes, and crimes against humanity.

The panel explained that, because plaintiffs' claims were plainly time-barred, it did not address the substantial legal questions the case posed concerning FSIA jurisdiction.

## COUNSEL

Kathryn Lee Boyd (argued) and Thomas B. Watson, McKool Smith Hennigan PC, Los Angeles, California; Rajika L. Shah, Kristen L. Nelson, Schwarcz Rimberg Boyd & Rader LLP, Los Angeles, California; Vartkes Yeghiayan, Yeghiayan Law Corp. P.C., Glendale, California; Michael J. Bazyler and Kristen L. Nelson, ALC Lawyers PC, Los Angeles, California; for Plaintiffs-Appellants/Cross-Appellees Alex Bakalian, Anais Haroutunian, and Rita Mahdessian.

Mark J. Geragos (argued) and Tina Glandian, Los Angeles, California; Stanley D. Saltzman and Adam M. Tamburelli, Marlin & Saltzman LLP, Agoura Hills, California; Brian Kabateck, Kabateck Brown Kellner LLP, Los Angeles, California; Frank Pitre, John Thyken, and Ara Jabagchourian, Cotchett Pitre & McCarthy LLP, Burlingame, California; for Plaintiffs-Appellants/Cross-Appellees David Davoyan and Hrayr Turabian.

Neil Michael Soltman (argued), Christopher P. Murphy, and Matthew H. Marmolejo, Mayer Brown LLP, Los Angeles, California; David Saltzman, Saltzman & Evinch PLLC, Washington, D.C.; Charles Rothfeld, Mayer Brown LLP, Washington, D.C.; for Defendants-Appellees/Cross-Appellants.

**OPINION**

HURWITZ, Circuit Judge:

From 1915 to 1923, in what is often referred to as the Armenian Genocide, the Ottoman Empire massacred, forcibly expelled, or marched to death 1.5 million of its Armenian citizens, seizing the property of the dead and deported.[1]   In 2010, the plaintiffs in these consolidated actions, United States residents descended from victims of the Genocide, sued the Republic of Turkey and two Turkish national banks, seeking compensation for property taken from their ancestors almost a century ago.

To avoid a time-bar on claims like these, California adopted a statute in 2006 providing that any limitations period for suits arising out of the Armenian Genocide would not expire until December 31, 2016.  Act of Sept. 25, 2006 (S.B. 1524), ch. 443, sec. 2, 2006 Cal. Stat. 3235–37 (codified at Cal. Civ. Proc. Code § 354.45).  Under that statute, the complaints in these cases were timely filed. However, we subsequently held the California law unconstitutional.  *See Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1076–77 (9th Cir. 2012) (en banc) (finding preempted Cal. Civ. Proc. Code § 354.4, which dealt with claims arising out of the Armenian Genocide against insurers); *Deirmenjian v. Deutsche Bank AG*, 548 F.

---

[1] *See* Comm'n on the Responsibility of the Authors of the War and on Enf't of Penalties, Violation of the Laws and Customs of War: Reports of Majority and Dissenting Reports of American and Japanese Members, annex I at 30, 34–35 (1919); *see also* Press Release, White House, Statement by the President on Armenian Remembrance Day 2019 (Apr. 24, 2019), https://www.whitehouse.gov/briefings-statements/statement-president-armenian-remembrance-day-2019/.

App'x 461, 463 (9th Cir. 2013) (finding § 354.45 preempted).  In the absence of the invalidated extension statute, the plaintiffs' claims are plainly time-barred.  We affirm the district court's dismissal of their complaints.

## I.  Background.

### A.  Facts.[2]

During World War I, the Ottoman Empire began forcibly relocating its Armenian subjects away from population centers and into the desert, causing the deaths of over a million ethnic Armenians.  The Empire confiscated the real property left behind by the victims of the Armenian Genocide.

The Republic of Turkey, the successor to the Ottoman Empire, commingled proceeds from the sale and use of the confiscated property with its general treasury funds.  The plaintiffs allege that the defendants, the Central Bank of the Republic of Turkey and T.C. Ziraat Bankasi ("the Banks"), received the commingled funds as deposits from the Turkish government and have refused to disgorge them.

### B.  The California Statute of Limitations.

In 2006, the California legislature determined that existing state law did "not provide sufficient relief for Armenian Genocide victims whose assets were deposited with or held by financial institutions."  S. Judiciary Comm., Bill Analysis, S.B. 1524, 2005–2006 Leg., Reg. Sess. at 2

---

[2] Because the district court granted the Banks' motion to dismiss, we take the well-pleaded allegations in the operative complaints as true. *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017).

(Cal. Apr. 26, 2006) [hereinafter "2006 Committee Report"]. It therefore passed a law to ensure that actions "brought by an Armenian Genocide victim" or her heirs, "seeking payment for . . . looted assets, shall not be dismissed for failure to comply with the applicable statute of limitation, if the action is filed on or before December 31, 2016." Cal. Civ. Proc. Code § 354.45(c). The legislature expressly recognized that in the absence of such a statute, such actions would be time-barred. *See* S. Judiciary Comm., Bill Analysis, S.B. 1915, 1999–2000 Leg., Reg. Sess. at 5–6 (Cal. May 10, 2000) (discussing "the revival of otherwise time-barred suits" under § 354.4).

## C.  Procedural History.

This appeal involves two actions filed in 2010. In the first, Alex Bakalian, Anais Haroutunian, and Rita Mahdessian allege the Ottoman Empire expropriated 122.5 acres of their ancestors' property during the Armenian Genocide. Their suit against the Banks asserts unlawful expropriation, unjust enrichment, and statutory interference with property rights, and seeks imposition of a constructive trust, an accounting of the looted assets, and declaratory relief. In the second case, Garbis Davoyan and Hrayr Turabian sue the Banks on behalf of themselves and a putative class of descendants of Armenian property owners. They also seek imposition of a constructive trust and an accounting, and assert claims of breach of statutory trust, unjust enrichment, and "human rights violations and violations of international law."[3]

---

[3] Both sets of plaintiffs also sued the Republic of Turkey. Turkey initially defaulted, but the district court vacated the default when

The complaints assert two broad theories of recovery. They first argue that the Ottoman Empire wrongfully confiscated their ancestors' property, depositing the rents and proceeds in the Banks, and that a constructive trust should therefore be imposed over those assets. Alternatively, they allege that the Empire itself held the property "in trust and for safekeeping on behalf of the rightful Armenian owners" under Turkish "Abandoned Property Laws," and that the Banks have breached that trust by not turning the proceeds over to the plaintiffs.

The Banks moved to dismiss for lack of subject matter jurisdiction, asserting immunity as instrumentalities of the Republic of Turkey under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(a).  In response, the plaintiffs urged that immunity should be denied under the expropriation and commercial activity exceptions to the FSIA.  *Id*. § 1605(a)(2)–(3).  The Banks also moved for judgment on the pleadings, arguing that the plaintiffs' claims were barred by the statute of limitations.

The district court dismissed both complaints.  It found the commercial activity exception inapplicable because the Banks' alleged conduct did not have a sufficiently direct effect in the United States.  And, because the Armenian victims of the Genocide were subjects of the Ottoman Empire, the court concluded that the expropriation exception could apply only if the Empire had otherwise violated international law by committing genocide.  But, the court held, determining whether the Ottoman Empire had committed genocide was a non-justiciable "inherently

---

dismissing these actions.  This appeal does not challenge the dismissal of the actions against Turkey.

political question." The court did not reach the statute of limitations issue, which had been fully briefed by the parties.

The plaintiffs timely appealed, and we consolidated the two cases.

## II. Discussion.

We review a dismissal for lack of subject matter jurisdiction and judgment on the pleadings de novo, *Arrington v. Wong*, 237 F.3d 1066, 1069 (9th Cir. 2001), "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party," *Gregg*, 870 F.3d at 886–87 (internal quotation marks and citation omitted). To decide whether an action is time-barred under that standard, we "must determine whether the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citation omitted).

We have already held, as noted above, that by "providing relief and a friendly forum to a perceived class of foreign victims," California Code of Civil Procedure § 354.45 "intrudes on the federal government's exclusive power to conduct and regulate foreign affairs," and is therefore preempted. *Movsesian*, 670 F.3d at 1077; *see Deirmenjian*, 548 F. App'x at 463. The issue is therefore whether the plaintiffs' claims are facially time-barred in the absence of that statute.

### A. Choice of Law.

Because the plaintiffs assert statutory jurisdiction under the FSIA, we apply federal common law choice of law rules to determine the applicable statute of limitations. *See*

*Chuidian v. Philippine Nat'l Bank*, 976 F.2d 561, 564 (9th Cir. 1992).  We must apply the forum's statute of limitations unless (a) the forum would allow the claim; (b) "maintenance of the claim would serve no substantial interest of the forum;" and (c) "the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." *Huynh*, 465 F.3d at 997 (quoting Restatement (Second) of Conflict of Laws § 142 (Am. Law Inst. 1988)); *see also In re Sterba*, 852 F.3d 1175, 1179–80 (9th Cir. 2017).  If the forum's law applies, we also apply its accrual and tolling rules.  *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184 (9th Cir. 2009).

The threshold question is therefore whether California law would allow the plaintiffs' claims.  The longest arguably applicable California statute of limitations is the ten-year statute for claims of genocide, war crimes, and crimes against humanity.  Cal. Civ. Proc. Code § 354.8.[4]  The plaintiffs' claims are thus time-barred unless they either accrued in or were tolled until 2000.

---

[4] The *Davoyan* plaintiffs cite California Code of Civil Procedure § 348, which provides no limitation on the time to file a claim to recover bank deposits.  But, § 348 "does not apply to actions in which the underlying debtor-creditor relationship" between a bank and the depositing customer "is absent."  *Morse v. Crocker Nat'l Bank*, 190 Cal. Rptr. 839, 842 (Ct. App. 1983).  This is plainly such a case.  Indeed, in extending the statute of limitations, the California legislature acknowledged that § 348 does not apply to the plaintiffs' claims.  *See* 2006 Committee Report at 6 (recognizing that "Section 348 does not address looted assets," which were "not necessarily 'deposited' by customers").

## B. Accrual of Claims.

"In the case of an involuntary trust the statute of limitations begins to run, regardless of repudiation thereof, from the time when the wrongful or fraudulent acts are performed by the trustee, except that the statute is tolled as to the owner of the property until he actually acquires knowledge of the wrongful acts, or, by the exercise of reasonable care, until he is charged with such notice." *Wilkerson v. Seib*, 127 P.2d 904, 907 (Cal. 1942) (en banc) (quoting *Truesdail v. Lewis*, 115 P.2d 218, 221 (Cal. Ct. App. 1941)).  We assume for purposes of our accrual analysis the truth of the plaintiffs' allegations that either the Ottoman Empire illegally seized the property of the plaintiffs' predecessors, or the Empire and the Banks placed the property in trust under Turkish law but later illegally refused to return it.  If the initial expropriation was wrongful, the plaintiffs' claims accrued by 1923.  If the property was placed in trust, the plaintiffs acknowledge that "[l]aws passed in 1928 and 1929 formally ended Turkey's disingenuous attempt at the restitution of immovable property to its rightful Armenian owners."  Thus, the plaintiffs' predecessors should have known well more than ten years ago that Turkey did not intend to return their property.

The plaintiffs do not allege that any critical facts about the expropriation have been discovered since 2000.  *See Oeth v. Mason*, 56 Cal. Rptr. 69, 72 (Ct. App. 1967).  Nor do they seek the return of a specific piece of personal property.  This case is therefore distinguishable from actions seeking the return of particular items, like paintings, stolen in war and only discovered years later in museums.  *See, e.g.*, *Republic of Austria v. Altmann*, 541 U.S. 677, 680–85 (2004).  Indeed, such actions are governed by a different

California statute of limitations.  Cal. Civ. Proc. Code § 338(c)(3)(A) ("[A]n action for the specific recovery of a work of fine art . . . , in the case of unlawful taking or theft, . . . shall be commenced within six years of the actual discovery by the claimant . . . of both:" (i) "[t]he identity and the whereabouts of the work of fine art;" and (ii) facts indicating "that the claimant has a claim for a possessory interest" in the art.).

## C.  Equitable Tolling.

Because the claims at issue accrued by the late 1920s, these suits are timely only if the statute of limitations was equitably tolled until 2000—a period of over seventy years. Equitable tolling requires: (1) timely notice to the defendant of the claim; (2) lack of prejudice to the defendant; and (3) "reasonable and good faith conduct on the part of the plaintiff." *Addison v. State*, 578 P.2d 941, 943–44 (Cal. 1978).

We have no doubt that the survivors of the Ottoman Empire's atrocities experienced enormous hardships after the seizure of their property.  Indeed, we take as true the allegations in the operative complaints that it "was impossible for Plaintiffs' predecessors to seek compensation for their stolen property or focus on anything but rebuilding their lives."[5]  But, these suits are brought not by the victims of the Armenian Genocide, but rather by residents of the United States long removed from its carnage, many of whose predecessors relocated to this country decades ago.  And the

---

[5] Although California provides statutory tolling for plaintiffs unable "to commence an action" "by reason of the existence of a state of war," Cal. Civ. Proc. Code § 354, that law covers only the period of active hostilities or occupation. *See In re Caravas' Estate*, 250 P.2d 593, 596–97 (Cal. 1952) (en banc).

*current plaintiffs* do not allege any attempts to pursue these claims judicially prior to 2010. *See Long v. Forty Niners Football Co.*, 244 Cal. Rptr. 3d 887, 892 (Ct. App. 2019) ("Where a claim is time-barred on its face, the plaintiff must specifically plead facts that would support equitable tolling.").

It is possible that the plaintiffs believed that any suit against the Republic of Turkey or its instrumentalities would have been futile until 1976, when Congress adopted the FSIA and codified the doctrine of foreign sovereign immunity and exceptions to that doctrine. But, even if we assume that the plaintiffs' claims were equitably tolled until 1976, the plaintiffs do not explain why they should be tolled a further twenty-four years. Thus, even under the most charitable of assumptions, as the California legislature expressly recognized in passing § 354.45, the plaintiffs' claims against the Banks are time-barred.

### III. Conclusion.

Because we find the plaintiffs' claims plainly time-barred, we do not address the substantial legal questions these cases pose concerning FSIA jurisdiction. We acknowledge the Supreme Court's directive that the substantive issue of foreign sovereign immunity, which implicates subject matter jurisdiction, should generally be addressed "as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017). But, we are nearly a decade past the outset of these cases, and the Supreme Court has also stressed that "foreign sovereign immunity's basic objective" is "to free a foreign sovereign from *suit*." *Id.* That objective is ill-served by continuing a difficult exploration—in the context of a clearly time-barred action—about whether there is a "genocidal takings"

exception in the FSIA and, if so, whether the plaintiffs' claims qualify under that exception. In particular, answering that question would require us to decide whether to consider the state of international law at the time of the taking or at some later point, and whether at the relevant point in time either genocide or a genocidal taking was a recognized violation of international law. Nor would analyzing the district court's conclusion—that the "political question" doctrine prevents us from addressing FSIA jurisdiction in light of Turkey's denial of the Armenian Genocide—free the foreign sovereigns from suit as early as possible. The political question analysis also turns on a complex issue of first impression: whether the FSIA necessarily authorizes the judiciary to decide in the first instance whether a genocide has occurred even if a foreign state denies that it has.

Article III grants the federal courts general subject matter jurisdiction over claims like those presented by the plaintiffs, which indisputably "arise under" federal law. *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 497 (1983) ("[E]very action against a foreign sovereign necessarily involves application of a body of substantive federal law."). The issue before us is thus only one of statutory jurisdiction—the scope of the FSIA—not of Article III jurisdiction. *See id.* at 497–98.

The goals behind the Supreme Court's general admonitions against hypothetical jurisdiction—to avoid advisory opinions on the merits and drive-by jurisdictional rulings—are best served in this unusual context by resting our decision on a straightforward statute of limitations determination, rather than addressing the novel and important questions of law we would otherwise have to decide. *Compare Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998) (warning courts not to "use the

pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed"). The Court "appears to allow an exception to the rule against" hypothetical jurisdiction "in those 'peculiar circumstances' where the outcome on the merits has been 'foreordained' by another case such that 'the jurisdictional question could have no effect on the outcome.'" *Ctr. for Reprod. Law & Policy v. Bush*, 304 F.3d 183, 194 (2d Cir. 2002) (Sotomayor, J.) (quoting *Steel Co.*, 523 U.S. at 98); *see also Sherrod v. Breitbart*, 720 F.3d 932, 936–37 (D.C. Cir. 2013); *Seale v. INS*, 323 F.3d 150, 155–57 (1st Cir. 2003).

Our decision in *Movsesian*, issued while this litigation was ongoing, foreordained the ultimate outcome of the plaintiffs' claims: they are time-barred. A ruling on these complex jurisdictional issues would thus in effect be an advisory opinion, because this case plainly cannot go forward even if there is jurisdiction. *See Norton v. Mathews*, 427 U.S. 524, 530–32 (1976) ("We think it unnecessary, however, to resolve the details of these difficult and perhaps close jurisdictional arguments. The substantive questions raised in this appeal now have been determined . . . ."); *Sec'y of the Navy v. Avrech*, 418 U.S. 676, 678 (1974) (per curiam) ("[E]ven the most diligent and zealous advocate could find his ardor somewhat dampened in arguing a jurisdictional issue where the decision on the merits is thus foreordained.").

We therefore affirm the judgment of the district court because these actions are time-barred.

**AFFIRMED.**