[Civ. No. 3142.  Second Appellate District, Division Two.—March 25, 1920.]

## SALLIE P. MARSH, Respondent, v. CARRIE F. HOLDER SMITH et al., Appellants.

[1] QUIETING TITLE—CONSTRUCTION OF GIFT DEED—CONFLICTING EVI-
DENCE — FINDING — APPEAL.—On an appeal from a judgment
in favor of the plaintiff in an action to quiet title, the appellate
court cannot interfere with the findings of the trial court that the
plaintiff, in executing a gift deed of the property to the defend-
ant, had no intention of making a gift or parting with her title
to the property, that the deed was made for the sole purpose of
conveying the property to the defendant in trust for plaintiff, to
be held for said plaintiff and conveyed to her upon demand, or
to carry out her wishes in regard to the same, where there is
direct conflict on that point and the findings of the trial court
are amply supported by the evidence.

[2] ID.—GROUND OF SPECIAL DEMURRER—WAIVER—APPEAL.—A ground
of special demurrer not on file or before the trial court is waived
and cannot be considered on appeal.

[3] ID.—NONSUIT—RECEIVER—PROPER DENIAL.—The trial court, in an
action to quiet title, having found in favor of the plaintiff, and
its findings having been supported by the evidence, properly de-
nied defendants' motion for a nonsuit and their motion for the
appointment of a receiver for the property.

[4] NEW TRIAL—AFFIDAVITS CONTRADICTING TESTIMONY—BELIEF OF—
PROVINCE OF TRIAL COURT.—The trial court is justified in refusing
to believe the statements contained in affidavits filed and presented
to it on a motion for a new trial where such statements are con-
tradictory to the testimony of the affiants given on the trial.

[5] ID.—POSSESSION OF EVIDENCE BEFORE TRIAL—FAILURE TO USE.—
Assuming that the trial court believes the statements contained in
affidavits filed and presented to it on a motion for a new trial,
it must deny the motion where such affidavits show on their face
that the evidence sought to be introduced on a new trial was in
the possession of defendants long before and during the time the
cause was pending, and that they did not see fit to avail them-
selves of it.

[6] ID.—EXPENDITURES BY TRUSTEE—REPUDIATION OF TRUST—WAIVER
OF REIMBURSEMENT—EVIDENCE.—In a suit by a mother against her
daughter to quiet title to certain real property, following the re-
pudiation by the daughter of the trust under which she held the
property, evidence regarding moneys claimed to have been ex-
pended upon the property by the daughter is properly stricken

out where it appears that the daughter claims to be the absolute owner of the property and that the expenditures were not made because of a reliance upon the deed from her mother, but because she claimed that it was her own property.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

William Freeman, S. M. Davis and E. T. Langley for Appellants.

R. Y. Williams and A. W. Rutan for Respondent.

THOMAS, J.—This is an action brought to quiet title, and for an injunction to restrain defendants from interfering with plaintiff's possession of the property in question, and the defendant Carrie F. Holder Smith from conveying or encumbrancing the title thereto, with a further prayer ''that it be adjudged and decreed that if said defendant Carrie F. Holder Smith has any title in said property, the said title is that of a trust only for the benefit of said plaintiff,'' as well as for general relief.

The defendants appeared separately. For our present purposes it will suffice to say that each of them, except as to certain formal averments, denied the material allegations of the complaint. The defendant Carrie F. Holder Smith set up, as a further defense, a certain deed alleged to have been executed and delivered to her by the plaintiff, and in consideration therefor the expenditure by said last-named defendant of the sum of one thousand one hundred dollars to satisfy a certain mortgage, and an agreement on her part to advance such other and further sums as might be necessary for the continued maintenance, support, and living of the plaintiff, with the additional proviso that she, plaintiff, ''was to live and reside upon said property during the remainder of her natural life''; and that said defendant had done her part since, and expected to continue to carry out her part of the agreement. This defendant further claims to have expended a large sum of money in improving, by certain repairs and the erection of a structure thereon, the property in question, and that she did so in

good faith, "understanding that the title to said property was vested in this defendant absolutely"—praying that her title therein be quieted in herself. After trial the court found in favor of plaintiff and judgment was entered accordingly. There was a motion for new trial, which was denied. The appeal is from the order denying such motion, and from the judgment so entered.

Plaintiff is an old lady—nearly seventy-four years of age at the time of the trial. She is the mother of the defendant Carrie F. Holder Smith, and apparently is a woman of the type of "the good old days." The testimony of herself, as well as that of her daughter, shows that she was familiar with the Biblical truths, and that she tried to apply their principles in her daily walks and conversation. The defendant Carrie F. Holder Smith, her daughter, had herself arrived at the age of discretion, being at the time of the trial fifty-two years of age. She seems to have had a wide experience, both in business and matrimonial enterprises, having been in the real estate calling, and, at the time of the trial, living with her fourth husband, the defendant George Washington Smith. Her first husband, it appears, died; the marriage relation between herself and her second, as well as her third husband, was dissolved by the surgery of divorce.

From the record before us we gather that plaintiff's husband had died several years prior to the trial; that for a long time prior to his death plaintiff and he had owned the particular land described in the complaint, and which is the land in controversy here, as joint tenants with the right of survivorship; that on the probation of the estate of said deceased the life estate of the latter was terminated, and the sole title, both legal and equitable, became, and was by the court declared to be, vested in the plaintiff by virtue of a decree duly and legally entered under and in pursuance of the provisions of section 1723 of the Code of Civil Procedure; that the defendant Carrie F. Holder Smith, for some reason, was not pleased with this disposition of the property, and that she apparently then devised a plan, whereby she might become the owner thereof, notwithstanding said decree.

For many years an intimate acquaintanceship had existed between plaintiff, plaintiff's said husband, and one William

Freeman, a reputable member of the bar of this state. In fact, the plaintiff and her husband had known Mr. Freeman from his boyhood, and each of them regarded him with high esteem, having absolute confidence in him. The trial court found—and, we think, correctly, too—"that said William Freeman acted at all times in the utmost good faith in the settlement of said estate." Notwithstanding this fact, the defendant Carrie F. Holder Smith originated and maintained for a considerable time a propaganda designed to, and which eventually did, arouse in the mind of this plaintiff a doubt as to the integrity of said Freeman, which doubt finally occasioned the supplanting of Mr. Freeman for another equally reputable member of the bar —Mr. Horace C. Head, of Santa Ana, California—who, however, would not accept such employment until determined that such substitution was entirely satisfactory to Mr. Freeman. The hook upon which the argument used by said defendant Smith in poisoning plaintiff's mind against said Freeman was hung was the fact that the latter had, as a matter of convenience and for the saving of expense, procured a deed from plaintiff, as the administratrix of her deceased husband's estate, to one Dr. Talley and wife, which deed was to be used in a contemplated compromise, authorized at the time by the judge of the probate court wherein the proceedings relating to the probate of said decedent's estate were pending, of certain claims presented by Dr. Talley and wife against said estate. This deed, however, was never used. During the time subsequent to its execution, though, the defendant Mrs. Smith, according to plaintiff's testimony—which was believed by the trial court—kept up her propaganda, insisting that plaintiff "may have signed away" her rights, that she was signing papers the contents of which she did not know, that Freeman might get the property, etc. In this connection plaintiff testified: "Well, I studied over it and prayed over it, and I thought, well, there couldn't be any harm in it. She and the children would be the only heirs I would have; what difference would it make? I felt that way; but still I thought, well, there could be such a thing that William [Mr. Freeman] might have done such a thing. Of course, things happen we never expect in this life. . . . Honestly, I didn't have any peace now. Every few days we would

go over that. I got nervous over that. It worried me to lose confidence in my friend.'' This was kept up so long that plaintiff concluded that perhaps, in order to avoid any such possibility as suggested, the best thing to do was to give her daughter, Mrs. Smith, a deed to the property in question, in compliance with the latter's suggestion that by so doing she, the defendant, would thus save the home for plaintiff. According to one of plaintiff's witnesses—Mrs. Wells—a daughter of the defendant Carrie F. Holder Smith, the latter said to plaintiff: ''You have signed some papers or deeds, and you do not know but what you have signed away your rights to the place, and Freeman will defraud you from it, and I will protect you in this if you will give me a deed.'' The instrument, in the form of a gift deed, was executed accordingly. [1] The trial court found that plaintiff had ''no intention of making a gift or parting with her title to the said property; . . . that the said deed was made for the sole purpose of conveying the said property to said defendant Carrie F. Holder Smith, in trust for plaintiff, to be held for said plaintiff and conveyed to her upon demand, or to carry out plaintiff's wishes in regard to the same.'' There is direct conflict on this point, and the findings of the learned trial court are amply supported by the evidence. We cannot, therefore, interfere. The trust referred to above was thereafter deliberately repudiated by said defendant. Her conduct toward plaintiff was, according to a legitimate inference which may be drawn from the evidence, cruel, and almost ruthless. The record shows that she tried to throw things from the house on the premises in question; broke the screen door open by force; took things away; locked up one room which plaintiff had rented; and herself demanded the payment of rent from plaintiff's renters who were occupying rooms upstairs in plaintiff's said premises, which rent, according to plaintiff's own testimony, was her sole source of income.

Appellants urge five points for reversal: (1) ''The complaint does not state a cause of action, and is subject to general demurrer. The causes of action are inconsistent and repugnant, and could not be joined. They are stated and commingled in such a manner that the defendants could not be informed by the complaint of the ultimate facts upon which the plaintiff relied, and whether the plaintiff

claimed the property as the owner in fee or as beneficiary of an express trust or of a constructive trust." (2) "The object of the parties and deed at the time of its execution was to convey a legal estate in fee simple as a gift to the defendant for her own use, and not in trust for the plaintiff." (3) "The motion of the defendants for a nonsuit, when plaintiff rested her case in the trial, ought to have been granted by the trial court." (4) "The motion of defendants for the appointment of a receiver should have been granted by the trial court." (5) "The motion of the defendants for a new trial should have been granted by the trial court." In other words, these five "points" may be divided, for convenience, into two divisions: (1) Errors of law occurring at the trial; and (2) insufficiency of the evidence to support the findings.

[2] As to the first point urged—the demurrer—it should be suggested that no demurrer, general or special, was on file or before the trial court, but is urged here for the first time. As against a general demurrer, the complaint in this action is sufficient. As to any ground for the special demurrer, that was waived, and cannot be considered here. (Sec. 434, Kerr's Cyclopedic Code of Civil Procedure, and cases cited thereunder.)

With respect to the second point, as we have already seen, the trial court found against defendants' contention, and there is abundant evidence to support such finding.

[3] As to the third and fourth points, it logically follows from what we have said above that the learned trial court was correct in its ruling denying defendants' motion for nonsuit. And with the same force it may be stated that, the findings being supported by the evidence, and they being in favor of plaintiff, it is not only apparent, but, we think, must now be obvious to all, that no order which the trial court might have made appointing a receiver for plaintiff's property, under the facts disclosed by this record, could stand. The ruling thereon was correct.

A consideration of the fifth point urged discloses the fact that, upon the presentation of the motion for a new trial, two affidavits were filed and presented to the court—one by each of the defendants here. The affidavit of defendant Carrie F. Holder Smith shows, among other things, that her mother—plaintiff—was very much opposed to affiant's

marriage to her defendant husband; that the plaintiff had, "about three months prior to said trial," told affiant-defendant that "there is a scheme—we have a scheme by which you will be compelled to give me the property. . . . You had better deed me the property before it is too late"; that she —affiant—forgot to call this fact to the attention of her attorneys before and during the trial; that because of said alleged fact she claimed and charged that there existed between the plaintiff and certain witnesses who testified at the trial, a conspiracy to defraud her out of the property in controversy; and that she did not believe until after the trial that such a conspiracy existed. The affidavit of the defendant George Washington Smith was intended to bolster up the defendant wife's affidavit as to the plaintiff being opposed to their marriage; but even though he claims to have had the conversation to which he refers in his affidavit with the plaintiff shortly after the marriage of defendants, that notwithstanding this fact, he did not mention the incident to defendants' attorneys nor to his defendant wife for the reason, among others, "that this affiant did not wish to prejudice and bias the mind of his wife against her mother," plaintiff here. There were no counter-affidavits.

[4] On the trial the defendant George Washington Smith testified in part as follows: "Q. You are one of the defendants here? A. I ain't much interested in it. Q. You have been attending the trial here? A. Yes. Q. You have heard Mrs. Marsh testify as to certain statements you made to her with reference to her property in question? A. Yes. Q. I will ask you to state whether or not you made such statements? A. That's not true, because I never talked to any of them about that proposition whatever; I would swear to it." If this testimony be true, then it is unnecessary to point out that the statements made in his affidavit, to which we have just referred, cannot also be true. Under this state of the record, therefore, we cannot say that the trial court erred in refusing to believe the statements made in such affidavit, or in denying the motion for a new trial.

[5] But there is, we think, a stronger reason why the action of the court in denying the motion for a new trial should be sustained, viz.: Assuming that the court believed the affidavits presented, in their entirety, still the motion would have to be denied because they show on their face

that the evidence sought to be introduced on a new trial was in the possession of defendants and affiants long before and during the time the cause was pending, and that they did not see fit to avail themselves of it.    Hence, the motion was very properly denied.    (*County of Sonoma* v. *Stofen,* 125 Cal. 32, [57 Pac. 681] ; *James* v. *Oakland Traction Co.,* 10 Cal. App. 785, [103 Pac. 1082].)    Defendants certainly cannot be permitted to assert their own alleged forgetfulness—which is, so far as this case is concerned, but another term for negligence—and expect to succeed in maintaining their contention thereunder.

[6]  But one other question need be considered : Did the court err in striking out certain evidence regarding moneys claimed to have been expended upon the property by the defendant Carrie F. Holder Smith ?  We think not.    As already stated, defendants claimed to be the actual owners in fee of said property.    There was no cross-complaint served, filed in the case, or considered by the trial court.    Indeed, the defendants claim here to be the absolute owners of the property.    Had a cross-complaint been filed, therefore, it might have been stricken from the files.    (*Miller* v. *Luco,* 80 Cal. 257, [22 Pac. 195].)    With this condition of the record, can it be successfully maintained that defendants could legally obtain a judgment against the plaintiff for any moneys which they might have expended ?

It is contended by appellants that the defendant Carrie F. Holder Smith "has made large expenditures in the improvement of the property, and it would be inequitable and unjust that these amounts should not be repaid to said defendant in case she is deprived of the property and the deed canceled''; and in support of such contention we are cited the following cases : *Sullivan* v. *California Realty Co.,* 142 Cal. 201, [75 Pac. 767] ; *Clint* v. *Eureka Oil Co.,* 3 Cal. App. 463, [86 Pac. 817] ; *Herman* v. *Haffenegger,* 54 Cal. 161, and *Norris* v. *Lilly,* 147 Cal. 754, [109 Am. St. Rep. 188, 82 Pac. 425].    None of these cases is, we think, in point. The first case cited does hold that the failure of the trial court to allow defendant expenses necessarily incurred, etc., was error; but that holding was upon a state of facts much different from those with which we are here confronted. In that case it appears from the evidence that the defendant, with plaintiff's consent, had the entire management of

the property—a condition not presented in the case at bar. Indeed, there was no dispute in that matter on this phase of the question. Nor was there any evidence indicating an abuse of authority by one occupying a position of trust. This being true, defendant there was entitled, both in law and morals, to the return of any moneys expended by him while so acting. In the case at bar no such facts are found. We have already seen the methods employed by the defendant Mrs. Smith to procure the deed in the first instance. No equity is acquired through fraud. By her own testimony it conclusively appears that the expenditures claimed to have been made were not made because of a reliance upon the deed, but because she claimed that it was her own property—"my father died and he gave me this part of it, as I understood it"; in short, that the expenditures would have been incurred, deed or no deed.

The answer to our query must be in the negative.

Judgment and order affirmed.

Finlayson, P. J., and Sloane, J., concurred.