STONE, J.
 
 *
 

 Defendant and cross-complainant, Garnet Warnke, and a person not a party to this action owned
 
 *625
 
 mountain property fronting on a lake in the Big Bear Valley area of San Bernardino County. Mrs. Warnke and her coowner failed to make payments which became due on an obligation secured by a deed of trust, and the property was sold by the trustee. Mrs. Warnke purchased the property at the trustee’s sale. Following her attorney’s advice, she had it deeded to her sister, Mrs. Dickson, one of the cross-defendants herein. The sale occurred on December 16, 1952. Shortly thereafter Mrs. Dickson and her husband executed a quitclaim deed to the property, but left blank the name of the grantee. Although this deed was delivered by Mrs. Dickson to Mrs. Warnke, the name of the grantee was never filled in and it was not recorded. Mrs. Warnke occupied the property and paid the taxes until 1956, in which year the first tax delinquency occurred. Later, Mrs. Dickson paid this delinquency together with subsequent tax assessments up to the year 1958-59. On April 8, 1959, Mr. and Mrs. Dickson, cross-defendants herein, executed an agreement to sell the property to Clarence H. Jordan and Tressie 0. Jordan, his wife, who are plaintiffs and cross-defendants herein.
 

 The Jordans knew that the Dicksons lived in Santa Barbara at all times pertinent to the case, and that they never occupied the property at Big Bear Valley. Mr. Jordan, an attorney, had represented a Mrs. Edwards, another sister of Mrs. Warnke, in a divorce action several years before he and his wife purchased the property. From Mrs. Edwards, Jordan learned that Mrs. Warnke had an interest in the Big Bear property.
 

 Mrs. Warnke, who had been convicted of a felony, was on parole at the time the transaction between the Dicksons and the Jordans took place. Shortly before he and his wife purchased the property from the Dicksons, Jordan telephoned Mrs. Warnke’s parole officer. Following the conversation, Jordan wrote a letter to Mrs. Dickson in which he related that the parole officer asked if he were calling about Mrs. Warnke’s property. In the letter Jordan stated that he gave the parole officer a negative answer. The significance of the letter lies in Jordan’s admitted knowledge of Mrs. Warnke’s interest in the property, knowledge which he later denied while professing to be an innocent purchaser for value.
 

 The Jordans also visited the property before entering into the purchase agreement with Mr. and Mrs. Dickson. Although the Jordans admitted seeing books, clothing and food in the cabin, they made no inquiry as to who was in possession of
 
 *626
 
 the property. There was also evidence that improvements were being made at the time of the Jordans’ visit.
 

 The terms of the sale between the Dicksons and the Jordans were somewhat odd for a bona fide sale of real property. The total purchase price was $7,500, of which only $1,500 was payable in cash, the $6,000 balance being evidenced by a five-year, noninstallment, noninterest-bearing, nonassignable note. The agreement further provided that if the property were sold during the five-year period, the note along with other specified sums was to be paid from the proceeds of such sale. The Jordans were likewise to be reimbursed for taxes and other expenses to be paid during the five-year period, and any surplus was to be divided according to conditions set forth in the agreement. The property had a value of approximately $40,000, as contrasted with the $7,500 purchase price provided in the agreement between the Jordans and the Dicksons.
 

 The court found that Mrs. Warnke had furnished the money to buy the property at the time of the foreclosure sale December 16, 1952, and that title was taken in the name of her sister, Mrs. Dickson, in trust for Mrs. Warnke, pursuant to a resulting trust. The court further found that Clarence and Tressie Jordan were not innocent purchasers for value when they entered into the purchase agreement of April 8, 1958. The court found specifically that the purchase price the Jordans agreed to pay the Dicksons was disproportionate to the true value of the property; that at best the Jordans were joint venturers with the Dicksons.
 

 Pursuant to these findings, the court entered its decree that Garnet Warnke is the owner in fee simple of the real property, and that the Jordans and the Dicksons and all persons claiming under them subsequent to the filing of the
 
 lis pendens
 
 are barred from any and all claim of right, title or lien upon the premises. The decree further ordered the Jordans and the Dicksons to execute and deliver a quitclaim deed conveying the property to cross-complainant Garnet Warnke, and to clear the title of a deed of trust which they had caused to be recorded as a lien against the property.
 

 Counsel for cross-complainant Warnke served a notice of entry of judgment on Jordan, counsel for cross-defendants. Service was by mail and made on September 26, 1960, in the same city in which Jordan maintained his office. The Jordans and the Dicksons moved for a new trial, and on November 25, 1960, the last day for ruling on the motion under the 60-day limitation prescribed by Code of Civil Procedure section 660,
 
 *627
 
 the court entered a minute order purporting to grant cross-defendants a new trial in the event cross-complainant refused to comply with the conditions set forth therein.
 

 On December 20,1960, the court entered a second purported new trial order, which reads: Motion for New Trial in the above entitled action is granted on the grounds of Insufficiency of the evidence.”
 

 Cross-defendants have appealed from the judgment, and cross-complainant has appealed from the two orders granting motion for new trial.
 

 Taking up first the appeal from the judgment, we are constrained to observe that cross-appellants Jordans and Dick-sons devote much too much of their briefs to the futile purpose of discussing conflicts in the evidence. This court is a court of review and limits its functions accordingly. It is our duty to determine whether there is any substantial evidence in the record to support the findings and the judgment of the trial court, not to reweigh the evidence.
 
 (Overton
 
 v.
 
 Vita-Food Corp.,
 
 94 Cal.App.2d 367, 370 [210 P.2d 757];
 
 Berniker
 
 v.
 
 Berniker,
 
 30 Cal.2d 439, 444 [182 P.2d 557].) In doing so we must view the evidence in the light most favorable to the trial court’s findings.
 
 (Berniker
 
 v.
 
 Berniker, supra.)
 

 There is evidence that Mrs. Warnke furnished the money at the foreclosure sale, but that Mrs. Dickson took title to the property because Mrs. Warnke was under the impression that she could not take title in her own name. The quitclaim deed executed by Mr. and Mrs. Dickson to Mrs. Warnke is evidence of a substantial nature supporting this finding, even though the name of the grantee was left blank and the deed was defective. There is evidence that Mrs. Warnke took possession of the property and that until the time this action was instituted she or someone with her permission was in possession. On the other hand, Mrs. Dickson and her husband never took possession of the property nor exercised control over it.
 

 The foregoing facts establish a resulting trust within the rule laid down in the case of
 
 Von Zastrow
 
 v.
 
 Schiffbauer,
 
 114 Cal.App.2d 500 [250 P.2d 624], wherein the court said, at page 502:
 

 “. . . where a conveyance of land is made to one person and the consideration for the transfer is paid by another, the latter may claim and prove he is the beneficial owner of the real property and the grantee is merely the holder of the legal
 
 *628
 
 title. The transaction creates what is known as a
 
 ‘resulting trust.’
 
 [Citations.]” (See also 49 Cal.Jur.2d, Trusts, § 355, p. 194;
 
 Teixeira
 
 v.
 
 Domingos,
 
 171 Cal.App.2d 196, 202 [339 P.2d 863].)
 

 The Jordans contend that if it be conceded solely for the sake of argument that Mrs. Dickson took title to the property as a trustee for Mrs. Warnke, nonetheless the Jordans are bona fide purchasers for value and should prevail over Mrs. Warnke, who permitted the record title to the property to be placed in the name of Mrs. Dickson. Mrs. Warnke counters that the Jordans had notice of the resulting trust, and any interest in the property acquired by them as a result of the sales agreement between the Jordans and the Dicksons was an interest likewise held in trust. Civil Code section 2243 provides: ‘ ‘ Every one to whom property is transferred in violation of trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration. ’ ’
 

 There is substantial evidence in the record to support the finding that the Jordans had notice that Mrs. Warnke was the beneficial owner of the real property. First, there is the testimony concerning Jordan’s representation of Mrs. Edwards, a sister of Mrs. Warnke, in a divorce action. Mrs. Edwards testified that Jordan discussed her family affairs with her and in response to his questioning she told him that her sister, Mrs. Warnke, owned,property on the lake at Big Bear upon which she operated a tavern. There was Jordan’s conversation with Mrs. Warnke’s parole officer, and the letter which he wrote to Mrs. Dickson referring to the property. There was also evidence that prior to the execution of the agreement of sale Jordan saw a tax statement for the property which reflected the name of Mrs. Warnke as owner.
 

 Second, Jordan was put on notice by Mrs. Warnke’s possession of the property and his knowledge that Mr. and Mrs. Dickson neither resided on the property nor exercised control over it. Jordan admitted that he and his wife inspected the property prior to entering into the agreement with the Dick-sons, and that during the visit they saw personal effects of someone on the property but made no inquiry. When the Jordans visited the property the utilities were in operation, indicating that someone had paid the utility bills and that the property was occupied. Also of significance is the testimony that improvements were being constructed on the premises at the time of the Jordans’ visit. Thus, the Jordans had notice
 
 *629
 
 of occupancy by Mrs. Warnke or by someone other than the Dicksons.
 

 In
 
 Pacific Gas & Electric Co.
 
 v.
 
 Minnette,
 
 115 Cal.App.2d 698, 705-706 [252 P.2d 642], it was held that:
 

 “ *. , . Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property,
 
 and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such knowledge as would be gained by examination of the public records.’
 
 (66 C.J.S. 646, 647; see also Civ Cod., § 19, and 20 Cal.Jur. 238.) The foregoing rules are applied by the California courts.” (See also
 
 Manig
 
 v.
 
 Bachman,
 
 127 Cal.App.2d 216, 222 [273 P.2d 596] ;
 
 J. R. Garrett Co.
 
 v.
 
 States,
 
 3 Cal.2d 379 [44 P.2d 538];
 
 Asisten
 
 v.
 
 Underwood,
 
 183 Cal.App.2d 304, 309 [7 Cal.Rptr. 84].)
 

 Third, the finding that Jordan had notice of the defective title of Mrs. Dickson is supported by the discrepancy of price ($7,500 paid for property valued at $40,000), and the incredible terms of the sale ($1,500 cash, $6,000 note without interest or installments for five years and nonassignable, with reimbursement provisions for both the Dicksons and the Jordans). In
 
 Rabbit
 
 v.
 
 Atkinson,
 
 44 Cal.App.2d 752 [113 P.2d 14], the court had this to say about a purchaser being put on notice when obtaining property for a grossly inadequate consideration, at pages 757-758:
 

 “If the sum which the vendor is willing to take is grossly disproportionate to the value of the thing which is the subject of the negotiation, it is strong proof of a defective title, and sufficient to put a prudent person upon inquiry, and if the purchaser neglects to prosecute such inquiry diligently, he may not be awarded the standing of a
 
 bona fide
 
 purchaser. ’ ’ (See also
 
 Asisten
 
 v.
 
 Underwood, supra,
 
 p. 310.)
 

 Next, the Jordans and the Dicksons attack the judgment upon the ground the pleadings do not support the findings and the judgment that Mrs. Dickson held title in trust for Mrs. Warnke. An examination of the amended cross-complaint discloses the following allegations: sale of the property and payment of the purchase price by Mrs. Warnke; the execution of a trustee’s deed in the name of Mrs. Dickson; the execution and delivery of the quitclaim deed by Mr. and Mrs. Dickson to Mrs. Warnke; and possession of the property at all times by Mrs. Warnke. It is also alleged that the consideration paid by the Jordans was grossly disproportionate to the value of the property; that the Jordans had notice of the claim
 
 *630
 
 of Mrs.
 
 Warnke;
 
 and that they were not innocent purchasers. These allegations are sufficient to permit the introduction of evidence of a resulting trust. Certainly the pleadings are much more explicit than those in the case of
 
 Costa
 
 v.
 
 Neves,
 
 12 Cal.2d 121 [82 P.2d 600], holding, at page 126, that a “plaintiff may allege that he is the owner of the property and that the defendant without right withholds from him its possession, and if the defendant sets up title in himself the plaintiff may be permitted to show that he is the equitable owner and the defendant holds the title in trust for him.” (See
 
 Calkins
 
 v.
 
 Calkins,
 
 63 Cal.App. 292 [218 P. 611];
 
 Marsh
 
 v.
 
 Smith,
 
 46 Cal.App. 692 [189 P. 1037].)
 

 Cross-defendants also contend that the court erred by admitting into evidence the deposition of one Reiter, a former attorney for Mrs. Warnke. The deposition was taken by Jordan as counsel for the Jordans and the Dicksons. Objection to the introduction of this evidence was predicated upon Jordan’s statement to the court that he had talked to Reiter after taking the deposition and there were some additional matters he wished to cross-examine him about; matters which he felt would clear up statements made by Reiter in the deposition. He further advised the court that Reiter was within 150 miles of the place of trial and subject to subpoena, but made no offer to secure his presence by use thereof. Counsel for Mrs. Warnke urged the admission of the deposition upon the ground that Reiter was engaged in trial in the City of Los Angeles and unavailable; that the deposition had been taken by Jordan; and that the matters contained therein were germane
 
 to the
 
 trial. The court took the motion under submission; and later on during the trial overruled the objection and admitted the deposition into evidence.
 

 The admissibility of the deposition in this instance was a matter for the discretion of the trial court. Code of Civil Procedure section 2016, subdivision (d), part (3) (v), provides that:
 

 “(d) [Use of deposition.] At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions -. . . .
 

 “ (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds s
 
 *631
 
 . . . (v) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used. ’ ’
 

 Jordan has shown no abuse of discretion, in that he made no representation to the court that after obtaining additional information he was unable to take a second deposition, or that he had unsuccessfully attempted to subpoena Reiter. Further, he made no request for permission to subpoena Reiter when the court announced that the matter would be taken under submission. Under the circumstances shown by the record, we find no abuse of the discretion vested in the trial court by part (3) (v) of subdivision (d) of Code of Civil Procedure section 2016.
 

 Cross-defendants contend that Mrs. Warnke is not entitled to relief in equity because of “unclean hands.” They assign as error the court’s exclusion of proffered evidence that the purchase by Mrs. Warnke at the foreclosure sale in 1952 wiped out the interest of her coowner and of lien-holding creditors. However, the offer of proof failed to indicate any connection between cross-defendants in this action and the former coowner or creditors of Mrs. Warnke. The so-called “unclean hands” rule is stated thusly by the Supreme Court, in
 
 Bradley Co.
 
 v.
 
 Bradley,
 
 165 Cal. 237 [131 P. 750], at page 242:
 

 “It is not every wrongful act, nor even every fraud, which prevents a suitor in equity from obtaining relief. His misconduct must be so intimately connected to the injury of another with the matter for which he seeks relief, as to make it inequitable to accord him such relief. It must have been conduct which, if permitted, inequitably affects the relationship between the plaintiff and the defendant, nothing of which is here shown. Suffice it for this to make reference to 1 Pomeroy’s Equity Jurisprudence, section 399.” (See also
 
 Wiley
 
 v.
 
 Wiley,
 
 59 Cal.App.2d 840, 842 [139 P.2d 950];
 
 Moriarty
 
 v.
 
 Carlson,
 
 184 Cal.App.2d 51, 54 [7 Cal.Rptr. 282].)
 

 Cross-defendants also contend that Mrs. Warnke is precluded from recovering by reason of laches. The evidence on this issue is conflicting. There is no doubt that Mrs. Dickson paid some of the taxes, apparently doing- so under claim of title for the first time during the period that Mrs. Warnke was in prison, January 1956 until June of 1957. However, it is not disputed that the first written demand made upon
 
 *632
 
 Mrs. Warnke by Mrs. Dickson for taxes advanced was dated April 14, 1958, and that this action was commenced October 16, 1959. The record also indicates that Mrs. Dickson never asserted any right to possession of the property either before Mrs. Warnke entered prison or after she was released. A clear statement of the principle here involved is found in
 
 Berniker
 
 v.
 
 Berniker, supra,
 
 30 Cal.2d 439, wherein the court said, at pages 448-449:
 

 “Moreover, the facts and circumstances of this case suggest other grounds for the rejection of the doctrine of laches: It is not applied strictly between near relatives [citations]; it is of little significance in the case of a resulting trust [citation]; and ‘it is not designed to punish a plaintiff’ but is ‘invoked only where a refusal would be to permit an unwarranted injustice.’ [Citation.] To this latter point, the court said in
 
 Hovey
 
 v.
 
 Bradbury,
 
 112 Cal. 620, at page 625 [44 P. 1077] : . . it is never permitted to be invoked merely to aid a faithless trustee in consummating his wrong. ’ ”
 

 The Jordans have indicated no way in which the doctrine of laches could be advanced by them other than through Mrs. Dickson.
 

 We find no reason for reversing the judgment, so we turn now to the two orders purporting to grant cross-defendants’ motion for a new trial. Code of Civil Procedure section 660 provides: “. . . the power of the court to pass on motion for a new trial shall expire 60 days from and after service on the moving party of written notice of the entry of the judgment, . . .”
 

 A notice of entry of judgment was served September 26,1960, by counsel for Mrs. Warnke. Clearly, the second order granting a new trial, filed December 20, 1960, was made more than 60 days after service of notice of entry of judgment. Therefore it was in excess of the court’s jurisdiction, and void.
 
 (Hinrichs
 
 v.
 
 Maloney,
 
 169 Cal.App.2d 544, 546 [337 P.2d 471];
 
 Muller
 
 v.
 
 Municipal Court,
 
 176 Cal.App.2d 156, 161 [1 Cal.Rptr. 207].)
 

 The appeal from the new trial orders is thus narrowed to the first order, filed November 28, 1960, which reads as follows :
 

 “One cotenant who acquires an adverse outstanding title must afford to the other cotenant an opportunity to pay his share and enjoy the benefits of such acquisition.
 

 “The disposition of this action works no prejudice to the rights of any cotenant.
 

 
 *633
 
 “Such cotenant may, within a reasonable time, claim the benefit, if any, to which he may be entitled.
 

 “Evidence in anticipation of such possible claim is not germain
 
 [sic]
 
 to the present action.
 

 “The plaintiffs and cross-defendants, having paid the certain taxes on the property which were of benefit to the property, are entitled to repayment of such sums.
 

 “Both sides having made motions to vacate and/or modify the Findings of Fact and Conclusions of Law, It Is Ordered that the Findings of Fact and Conclusions of Law and Judgment be set aside and/or modified so as to provide: . . .
 

 “ (f) The second sentence in Paragraph III of the Conclusions of Law is stricken and in lieu thereof the following is substituted:
 

 “ ‘The cross-defendants and plaintiffs have paid taxes in the sum of $_ for the benefit of the property in question and are entitled to the repayment of such sum and are entitled to a lien on such property to secure such payment. ’
 

 “If these modifications are accepted by the defendant the motion for new trial will be denied; otherwise it will be granted for the limited purpose of effecting such changes.”
 

 A more troublesome order would be difficult to contrive. The last sentence creates the first problem in that the order was filed on the last possible day the court could act, and there was no way that defendant (Mrs. Warnke) could accept or reject the modifications. It is well established that a court may make a conditional new trial order.
 
 (Hurt
 
 v.
 
 Basalt Rock Co.,
 
 84 Cal.App.2d 81, 85 [190 P.2d 240].) It has also been held that if the 60-day limitation imposed by Code of Civil Procedure section 660 prevents a party from consenting to conditions specified in a conditional new trial order, the alternative provisions of the order automatically become effective. The result is that a new trial is granted just as though the condition had been rejected.
 
 (McDonald
 
 v.
 
 Randolph,
 
 80 Cal.App.2d 367 [181 P.2d
 
 909];
 
 3 Witkin, Cal. Procedure, p. 2092(d).)
 

 The court’s language, “otherwise it will be granted,” couched in the future tense, gives rise to an additional problem. Mrs. Warnke contends that this language reflects an intention to make an order at a future time dependent upon certain specified conditions. From this premise, Mrs. Warnke reasons that since the time for making such an order elapsed because of the 60-day limitation imposed by
 
 *634
 
 Code of Civil Procedure section 660, the court was without jurisdiction to carry out its intention expressed in future. The courts have held otherwise.
 
 Chapman
 
 v.
 
 Municipal Court,
 
 91 Cal.App.2d 689 [205 P.2d 712], at page 693, holds that the present tense is proper and preferable, but that use of the future tense does not vitiate an order made within the 60-day period. If the party designated is unable to comply or fails to comply with the condition, the effect of the use of the future tense is to automatically grant a new trial. (See 3 Within, Cal. Procedure, p. 2093.)
 

 Although the first new trial order is not invalid by reason of form (conditional and future), it is defective, nevertheless, because the changes imposed conditionally are predicated upon an insufficiency of the evidence, which ground is not specified in the order. Under Code of Civil Procedure section 657 it is conclusively presumed that a new trial order is not based upon the ground of insufficiency of the evidence unless that ground is specified in the order.
 
 (Aced
 
 v.
 
 Hobbs-Sesack Plumbing Co.,
 
 55 Cal.2d 573, 577 [360 P.2d 897].) The trial court attempted to remedy the defect by the second order granting a new trial solely upon the ground of insufficiency of the evidence. This effort failed because the second order, as heretofore noted, exceeded the jurisdiction of the court; it having been made more than 60 days after service of notice of entry of judgment.
 

 The final question is whether the order granting a new trial can be sustained in the absence of insufficiency of the evidence as a ground for its being granted. No ground is specified in the order, but it does recite that: “One cotenant who acquires an adverse outstanding title must afford to the other cotenant an opportunity to pay his share and enjoy the benefits of such acquisition.” From this statement we must conclude that the order was made upon the ground the court believed the judgment was “against law.” (Code Civ. Proe., § 657, subd. 6.) Yet the early case of
 
 Kaiser
 
 v.
 
 Dalto,
 
 140 Cal. 167 [73 P. 828], held, at page 169: “It must now be regarded as the settled rule that where all the issues of fact raised by the pleadings are found upon by the court, and the findings are correct, that an erroneous judgment drawn from those facts cannot be corrected by means of a motion for a new trial.”
 

 In the absence of insufficiency of the evidence as a ground for granting a new trial, this court must follow the
 
 *635
 
 language of
 
 Aced
 
 v.
 
 Hobbs-Sesack Plumbing Co., supra,
 
 appearing at page 577, to wit;
 

 “If this provision is not complied with, the appellate court is precluded from considering insufficiency of the evidence as justification for the order unless the evidence is insufficient as a matter of law and is without conflict on any material point.” (See also 36 Cal.Jur.2d, New Trial, § 102, p. 290.)
 

 As we have pointed out, the court made findings upon all of the issues, which are supported by substantial evidence. Viewed in the light of such findings, the judgment is not “against law.” On the contrary, Mrs. Dickson took title as a trustee under a resulting trust, and a trustee is not a cotenant. Mrs. Dickson as trustee under a resulting trust is not entitled to recover taxes which she paid on the property under claim of ownership. While it is true that a trustee is entitled under section 2273 of the Civil Code to be reimbursed for expenses paid on account of the trust property, this provision is restricted by section 2250 of the Civil Code to express trusts created for the benefit of another than the trustor. As a trustee by operation of law, Mrs. Dickson became an involuntary trustee. (Civ. Code, § 2217.) Thus she could not claim reimbursement for taxes voluntarily paid by her while asserting a claim adverse to the beneficiary.
 

 Since the Jordans were not bona fide purchasers, they stand in no better position than the Dicksons. Applicable to both the Jordans and the Dicksons is section 2275 of the Civil Code, which provides that “an involuntary trustee, who becomes such through his own fault, has none of the rights mentioned in this Article.”
 

 Since the judgment is not “against law” and since insufficiency of the evidence is not specified as a ground for the first order granting a new trial, that order cannot stand.
 

 The judgment is affirmed. The two orders purporting to grant a new trial are reversed.
 

 Shepard, Acting P. J., and Coughlin, J., concurred.
 

 A petition for a rehearing was denied August 2, 1962, and the petition of plaintiffs and appellants for a hearing by the Supreme Court was denied September 5, 1962.
 

 *
 

 Assigned by Chairman of Judicial Council.