[Civ. No. 521.   Fifth Dist.   Jan. 3, 1966.]

HERMINA GONCALVES TEIXEIRA et al., Plaintiffs and Respondents, v. HENRIQUE SOUSA VERISSIMO et al., Defendants and Appellants.

Thomas F. Lopez, Lawrence W. Young and Robert L. Young for Defendants and Appellants.

John H. Machado and Kenneth Machado for Plaintiffs and Respondents.

BROWN (R.M.), J.—Defendants appeal from a judgment in favor of plaintiffs impressing a constructive or resulting trust upon an undivided one-sixth interest in a parcel of real property situated in Tulare County, and declaring the defendant Henrique Sousa Verissimo, hereinafter referred to as Henry, an involuntary trustee thereof, and awarding judg-

ment in favor of the plaintiffs and against defendants Henry Verissimo and Emily Verissimo in the sum of $23,150 as the plaintiffs' share of the reasonable rental value of the property.

On appeal the defendants contend that the plaintiffs' cause of action is barred by the statute of limitations and the defense of laches; that the doctrine of res judicata precludes recovery as against Emily; and that the trial court erred in not allowing to the defendants a setoff for expenditures made by them in paying taxes and making improvements and for a proportionate share of the purchase price of the property.

We have concluded that the judgment against Henry, except for the amount of the money award, is proper; but that the judgment against Emily is erroneous.

This litigation has a stormy and involved history. A full exposition of the factual background appears in *Teixeira* v. *Domingos,* 171 Cal.App.2d 196 [339 P.2d 863], dealing with a prior action brought by these same plaintiffs against Emily alone. The facts there set forth need not be here repeated. Those facts will be adverted to only to the extent that they are necessary to place the contentions of the defendants in proper focus.

By the prior judgment, entered on March 7, 1958, and affirmed on appeal (*Teixeira* v. *Domingos, supra,* 171 Cal. App.2d 196), it was adjudicated that Emily, as an involuntary trustee, held for the benefit of these plaintiffs a one-third interest in a parcel of property which was designated throughout this trial and on appeal as Tulare No. 1,[1] a one-third interest in a parcel of property referred to as the Kings County ranch, and a one-sixth interest in a parcel of property referred to as Tulare No. 2; that she did not hold personal property or money for the benefit of the plaintiffs; and that, if she failed, within 10 days after the date of the judgment to execute deeds in favor of the plaintiffs to effectuate a transfer of their respective fractional shares of the three parcels of real property, the judgment and decree would itself operate as a conveyance to them of their respective interests. The judgment was recorded in Kings County and Tulare County on March 7, 1958.

The plaintiffs commenced this action on August 10, 1959, naming as defendants Henry and First Doe through Fourth

---

[1] We adopt the designations given to the three parcels of real property by the parties during the trial and in their appeal briefs.

Doe, seeking to impress a resulting trust upon a one-sixth interest in Tulare No. 2 held by Henry and to impress the same proportionate trust upon the rents, issues and profits of Tulare No. 2. At the trial it was shown by convincing evidence that, while the prior action was pending, Emily purchased Tulare No. 2, which consisted of 320 acres of land in Tulare County, taking title in the names of herself and Henry. She paid in cash the sum of $19,180 by checks drawn upon a bank account in which the rents, issues and profits of Tulare No. 1 and the Kings County ranch had been deposited, and assumed existing deeds of trust. Henry gave no consideration at the time of the purchase. In March or April 1953, all deeds of trust on the 320 acres were paid from the proceeds of a loan in the amount of $62,000, evidenced by a promisory note executed by both Henry and Emily and a deed of trust with Tulare No. 1 as security executed by Emily alone. At the time the loan was obtained, Henry approved a letter of instructions which referred to the prior pending action against Emily. Also, in March 1953, Henry and Emily executed an indemnity agreement which referred to the then pending prior action. Thus, the evidence clearly showed that Emily had used moneys which were a part of the trust res and had used the security of trust property for the purchase of Tulare No. 2. The evidence also established that Henry took title to an undivided one-half interest in Tulare No. 2 with knowledge of the claims of the plaintiffs. All of these transactions occurred prior to the March 7, 1958, judgment against Emily and while that action was pending.

Turning to the contentions made on this appeal, it should be noted that a considerable amount of confusion has resulted from the fact that in presenting their case for reversal, the defendants have viewed Henry and Emily in the same legal light, vigorously contending that they are cotenants of the plaintiffs and that the laws governing the rights and duties of cotenants apply. The plaintiffs, on the other hand, would treat both Henry and Emily as involuntary trustees, wrongfully withholding the trust res from the plaintiffs, and argue that the laws governing constructive trusts and the rights and duties incident thereto apply. We have concluded that each defendant occupies a different legal relationship to the plaintiffs and each must stand separate and alone beneath a different light. Henry is, as the trial court properly found, an involuntary trustee, and the propriety of

the judgment against him must be determined in accordance with the law governing such trusts. Emily is a cotenant with the plaintiffs and entirely different rules apply to this relationship.

We first consider the money judgment of $23,150 against Emily. It might first be mentioned that plaintiffs concede that the prior judgment against Emily is res judicata to its date and that they are not entitled to now recover any rents, issues or profits from any of the three parcels of property for any period prior to March 7, 1958. Yet, included in the present judgment against Emily is a sum in excess of $5,000, representing one-sixth of the reasonable net rental value of Tulare No. 2 for a period prior to March 7, 1958. This is clear error, but it is immaterial since we have concluded that the entire judgment against Emily is erroneous for the following reasons.

The trial court found, in pertinent part, that Henry held, as an involuntary trustee for the benefit of the plaintiffs, a one-sixth interest in Tulare No. 2; that the reasonable rental value of the property for the year 1952 was the sum of $4,000 net to the lessor; that thereafter said rental value increased 10 percent per year; and that the plaintiffs' share of the rent up to March 1, 1964, from Tulare No. 2 is the sum of $23,150; that the defendants have failed and refused to recognize the plaintiffs' rights in the trust res despite the previous adjudication; that the defendants are not entitled to claim any setoffs until such time as they recognize the trust and plaintiffs' rights thereunder; and found against the defendants on their affirmative defenses of limitations of actions, laches and res judicata. From the findings the trial court concluded that *Henry* is an involuntary trustee who became such through his own fault; that the plaintiffs are entitled to judgment against *Henry* imposing a trust upon an undivided one-sixth interest in Tulare No. 2; and that the plaintiffs are entitled to judgment against both defendants in the sum of $23,150 as their share of the reasonable rental value of Tulare No. 2 to March 1, 1964, and for reasonable rental value thereafter until the defendants recognize the rights of plaintiffs; and that the defendants are not entitled to any setoffs. It is significant that no finding was made, either expressly or by implication, that Emily was, at the time of this judgment, still an involuntary trustee, or that she occupied any special relationship to the plaintiffs which would cause liability to attach to her.

The findings and judgment against Emily are not in accord with the relief prayed for in the complaint, or the issues set forth in the pretrial order, or the evidence adduced at the trial. No basis for liability on the part of Emily was charged by the pleadings or established by the evidence and none is urged on this appeal. ■ The plaintiffs urge, in support of the judgment, that the trial court could well have determined that Emily is still an involuntary trustee of a one-sixth interest in Tulare No. 2 for the benefit of the plaintiffs. But the prior judgment against Emily, by its terms, terminated the involuntary trust wherein Emily was trustee and these plaintiffs were beneficiaries. There was, as the judgment of March 7, 1958, declared, no trust res capable of manual delivery and the judgment operated as a conveyance to the plaintiffs of their fractional interests in the three parcels of real property which Emily had theretofore held in trust. That judgment was duly recorded. The plaintiffs then ceased to be equitable owners and became actual and record owners of their respective fractional interests. The trust relationship between Emily and the plaintiffs ceased, for there no longer existed a trust res. There was nothing left in her possession which compelled a duty on her part to account to the plaintiffs. The plaintiffs then had no further cause of action against her.

■ The record has been searched in vain for pleading or proof evidencing some basis subsequently arising which would cause liability to attach to Emily. She was not a named defendant in this suit, but was served as First Doe. The complaint does not contain a charging allegation against the defendants sued under fictitious names, other than a general statement that "said defendants claim an interest in the real property." At the time of the filing of the complaint the state of the title to Tulare No. 2 was this: The plaintiffs owned a one-sixth interest by reason of the 1958 judgment; Henry held a one-sixth interest as an involuntary trustee for their benefit; and Henry and Emily together owned the remainder. Thus, since Emily could legally claim an interest in the property, a recitation to that effect in the complaint falls far short of stating any cause of action against her. By the prayer the plaintiffs seek a judgment declaring that Henry holds title to an undivided one-sixth interest in Tulare No. 2, together with rents, issues and profits thereof, in trust for the plaintiffs and "for such other and further relief as may be equitable in the premises."

The pretrial order presents no issue as to Emily. It is there stated that the plaintiffs seek to impress a trust in favor of themselves upon *Henry's* interest in the land, together with rents, issues and profits, and request an accounting by *Henry*. Issues reserved for trial are those framed by the pleadings, plus an issue of an accounting by *Henry*. An amendment to the complaint filed during the course of trial merely states that the rents, issues and profits from all three parcels of property, Tulare No. 1, Kings County ranch, and Tulare No. 2, ''have been retained by defendants for their own use and benefit, entirely commingled by them and used by them to purchase the real property subject to be impressed by a trust herein.'' Again there is no charging allegation as to Emily, entitling the plaintiffs to an accounting as to her for the period after the 1958 judgment. ■ Language borrowed from the case of *Livernois* v. *Brandt*, 225 Cal.App. 2d 301, at page 305 [37 Cal.Rptr. 279], is here pertinent: ''It is the general rule that a plaintiff must recover, if at all, upon the cause of action set forth in the complaint and not upon some other cause which may be developed by the proofs. [Citations.] ■ In *People* ex rel. *Dept. Public Works* v. *Valley Drive-in Theater Corp.*, 206 Cal.App.2d 309 [23 Cal.Rptr. 626], this court held that the pretrial order supersedes the issues raised by the pleadings and controls the subsequent course of the case as long as it remains unmodified. The parties and the court are bound by the agreed statement of the facts and issues and are not authorized to make findings contrary thereto without proper modification of the agreement and the pretrial order. See rule 216, California Rules of Court. No request was here made for amendment of the pleadings nor for amendment of the pretrial order.''

In an effort to save the judgment against Emily, the plaintiffs urge that the doctrine of theory of the case by trial is applicable. The record does not support the argument. It is the rule that ''A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded.'' (*Vaughn* v. *Jonas*, 31 Cal.2d 586, 605 [191 P.2d 432].) ■ But, ''It frequently happens that evidence which is admissible to establish one issue may tend to establish an issue other than that for which it is offered. It is the rule that evidence so introduced is available to establish any of the issues in the case. However, this rule is limited to the issues which are to be tried. Accordingly, evidence which is relevant to an issue actually raised by the

pleadings cannot be considered as authorizing the determination of an issue not presented.'' (*Rabago* v. *Meraz,* 60 Cal.2d 55 (dissent, p. 63) [31 Cal.Rptr. 777, 383 P.2d 129]; *Inouye* v. *Pacific Gas & Elec. Co.,* 53 Cal.2d 361, 366 [1 Cal.Rptr. 848, 348 P.2d 208]; *Lein* v. *Parkin,* 49 Cal.2d 397 [318 P.2d 1]; *Linder* v. *Cooley,* 216 Cal.App.2d 390 [31 Cal.Rptr. 271].)

■ In this case the principal issue was whether or not Henry held a one-sixth interest in Tulare No. 2 in trust for the benefit of the plaintiffs. To establish that issue a generous amount of testimony was offered and received relative to the facts leading up to the prior judgment against Emily. The trial judge thus heard, over and over again, that Emily had wrongfully withheld rents, issues and profits from Tulare No. 1 and the Kings County ranch; that she had commingled the proportionate share thereof owned by the trust with her own funds; and that she used such commingled funds and the security of Tulare No. 1 for the purchase of Tulare No. 2. Such evidence was relevant to show the source of the purchase price of Tulare No. 2, in order to trace trust funds into that parcel of property and into the hands 'of Henry. Without such a showing the plaintiffs' case against Henry must fail. Such evidence, however, related to the period prior to the judgment of March 1958. It must be remembered that Tulare No. 2 was purchased in 1952. Any testimony that Emily continued to retain the rents, issues and profits from the three parcels of land since the 1958 judgment is not meaningful without evidence establishing some theory under which such retention was wrongful, and the record is barren of such evidence. The doctrine of the theory of the case by trial does not aid the cause of the plaintiffs.

■ Nor may Emily be held liable as a cotenant. It is the general rule that a cotenant out of possession has no right against another in exclusive possession of the premises to recover a share of the profits derived from the common property by reason of the labor and expenditure of the cotenant in possession, nor may he recover rental value for occupancy and use of the property, where he has not been ousted or excluded and there has been no agreement between the cotenants that the premises were occupied by the cotenant in possession as a receiver or bailiff for a share of the rents and profits. (*Zaslow* v. *Kroenert,* 29 Cal.2d 541, 548 [176 P.2d 1]; *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237]; *Brunscher* v. *Reagh,* 164 Cal.App.2d 174, 176 [330 P.2d

396]; *Rutledge* v. *Rutledge*, 119 Cal.App.2d 114, 120 [259 P.2d 79]; *McWhorter* v. *McWhorter*, 99 Cal.App. 293, 295-296 [278 P. 454]; *Black* v. *Black*, 91 Cal.App.2d 328 [204 P.2d 950].) The plaintiffs make no claim that Emily ousted the plaintiffs from possession, or that the plaintiffs had entered into an agreement whereby Emily was to act as a "receiver or bailiff" for their share of the rents and profits.

It should be mentioned that there is an indication in the record that partition suits in which Emily is a party are now pending. We do not presume to here determine any issues between the plaintiffs and Emily which may be involved in the partition suits. Our holding is that, on the state of this record, no cause of action was pleaded or proved as against Emily.

As to Henry, the situation differs. Henry first urges that the cause of action against him is barred by the statute of limitations. The five-year statute of limitations embodied in section 318 of the Code of Civil Procedure governs this case. (*Cohn* v. *Goodday*, 191 Cal. 615, 625-627 [217 P. 756]; *Bradley Bros.* v. *Bradley*, 20 Cal.App. 1, 5-6 [127 P. 1044]; *Marshall* v. *Marshall*, 232 Cal.App.2d 232, 250-251 [42 Cal. Rptr. 686].) The problem is: When was the statute set in operation? In *Truesdail* v. *Lewis*, 45 Cal.App.2d 718, at page 723 [115 P.2d 218], it is said: "In the case of an involuntary trust the statute of limitations begins to run, regardless of repudiation thereof, from the time when the wrongful or fraudulent acts are performed by the trustee, except that the statute is tolled as to the owner of the property until he actually acquires knowledge of the wrongful acts, or, by the exercise of reasonable care, until he is charged with such notice."

To the same effect are *Airola* v. *Gorham*, 56 Cal.App.2d 42, 45 [133 P.2d 78], and *Hillyer* v. *Hynes*, 33 Cal.App. 506, 510 [165 P. 718]. The record discloses ample testimony to support the trial court's finding that the plaintiffs first learned in November 1957 that rents, issues and profits of Tulare No. 1 and the Kings County ranch had been used, in part, for the purchase of Tulare No. 2. The plaintiff Hermina Goncalves Teixeira was and is a resident of the Azores Islands, Republic of Portugal. Both Henry and Emily testified that there had been no communication between them and Hermina since 1951, prior to the purchase. Each of the remaining plaintiffs testified in turn that he or she had never resided in Tulare County and that each first acquired knowledge that Emily

had used rents, issues and profits from Tulare No. 1 and the Kings County ranch in making the purchase of Tulare No. 2 when Emily so testified during the trial of the prior lawsuit in November 1957. In support of the argument that the plaintiffs should be charged with knowledge at an earlier date, Henry points to evidence which merely creates a conflict with the evidence above summarized, which conflict was resolved in favor of the plaintiffs. This action was commenced on August 10, 1959, well within the five-year period.

Henry next contends that the plaintiffs' cause of action is barred because they do not meet the statutory requirement that they or their predecessors in interest were seized of possession of the property within five years before the commencement of the action. (Code. Civ. Proc., § 318.) The same argument was made and answered in *Hillyer* v. *Hynes, supra,* 33 Cal.App. 506, a constructive trust case. At page 510, the court said: ''We think, however, that while the main ground of the action is constructive fraud, and that one of its purposes is to enforce a trust, in its final purpose it is an action to recover the title and possession of real property, and is therefore subject to the provisions of section 318 of the Code of Civil Procedure. Accordingly the five-year period prescribed by that section is the only limitation which can be applied in bar of plaintiffs' cause of action. [Citations.] That section provides that no action for the recovery of real property or for the recovery of the possession thereof can be maintained, unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the property in question within five years before the commencement of the action; and while it appears that neither the plaintiffs nor any grantor or ancestor of theirs was ever seised or possessed of the property, we think that under the circumstances of this case Henry Romoser may well be considered as the predecessor of the plaintiffs within the meaning of the section, since if he had carried out the terms of the understanding by virtue of which he acquired an estate in the property he would have conveyed it to the plaintiffs or their intestate, and thus have been literally their predecessor in interest. It is the estate which in equity passed to the plaintiffs upon the death of Henry Romoser which they seek by this action to recover.''

Thus, when Henry took title to an undivided one-half of Tulare No. 2, he took it impressed with a trust to the extent

that trust funds were used for the purchase price. He held a one-sixth interest in behalf of the rightful owners, the plaintiffs herein, and thus "may well be considered as the predecessor of the plaintiffs within the meaning of the section." (*Hillyer* v. *Hynes, supra,* 33 Cal.App. 506, 510.)

It is next argued that the plaintiffs have been guilty of laches and an unreasonable delay in bringing this action. ▉ The question of laches is one primarily for the determination of the trial court and its ruling thereon will not be disturbed if there is substantial support for it in the evidence. (*Marshall* v. *Marshall, supra,* 232 Cal.App.2d 232, 252.) ▉ Language found in *Berniker* v. *Berniker,* 30 Cal.2d 439, is appropriate under the facts and circumstances of this case. It is there said, at pages 448-449 [182 P.2d 557] : "Moreover, the facts and circumstances of this case suggest other grounds for the rejection of the doctrine of laches: . . . 'it is not designed to punish a plaintiff' but is 'invoked only where a refusal would be to permit an unwarranted injustice.' (*Hiett* v. *Inland Finance Corp.,* 210 Cal. 293, 300 [291 P. 414].) To this latter point, the court said in *Hovey* v. *Bradbury,* 112 Cal. 620, at page 625 [44 P. 1077] : '. . . it is never permitted to be invoked merely to aid a faithless trustee in consummating his wrong.' "

The defense of laches is not available to Henry, who became an involuntary trustee through his own wrong.

It is next contended that Henry has no liability to the plaintiffs for a proportionate share of the reasonable rental value of Tulare No. 2. It is argued that, since he owned an undivided interest in the property, he is a cotenant with the plaintiffs, and the rules governing the rights and liabilities of cotenants, where one is in the exclusive possession of the common property, discussed in *Black* v. *Black,* 91 Cal.App.2d 328, 332-334 [204 P.2d 950], and *Schell* v. *Schell,* 74 Cal. App.2d 785, 789 [169 P.2d 654], are applicable. Plaintiffs may not find solace in those cases for it has been held that a trustee is not a cotenant. (*Jordan* v *Warnke,* 205 Cal.App.2d 621, 635 [23 Cal.Rptr. 300].) In *Islas* v. *Islas,* 213 Cal.App. 2d 412, the following statement is found at page 418 [28 Cal.Rptr. 850] : "It long has been the law in California that when a trustee denies the rights of the equitable owner and exercises exclusive possession under claim of right, he is chargeable with the reasonable rental value of the property. (*Heinlen* v. *Martin,* 53 Cal. 321, 345.) "

To the same effect is *Edgar* v. *Bank of America,* 73 Cal. App.2d 871, 878 [167 P.2d 509].

■ It is contended that the court erred in not allowing a credit for taxes and the costs of improvements placed upon Tulare No. 2, as well as payments made on the purchase price thereof. As to Emily, that issue was not before the court in this action. As to Henry, the answer is found in section 2275 of the Civil Code which provides that "An involuntary trustee, who becomes such through his own fault, has none of the rights mentioned in this Article." In *Jordan* v. *Warnke, supra,* 205 Cal.App.2d 621, at page 635, a similar contention was disposed of thusly: "While it is true that a trustee is entitled under section 2273 of the Civil Code to be reimbursed for expenses paid on account of the trust property, this provision is restricted by section 2250 of the Civil Code to express trusts created for the benefit of another than the trustor. As a trustee by operation of law, Mrs. Dickson became an involuntary trustee. (Civ. Code, § 2217.) Thus she could not claim reimbursement for taxes voluntarily paid by her while asserting a claim adverse to the beneficiary."

(See also *Marshall* v. *Marshall, supra,* 232 Cal.App.2d 232, 258; *Merchants Credit Assn.* v. *Brown,* 83 Cal.App.2d 296, 300-301 [188 P.2d 558]; *Kinert* v. *Wright,* 81 Cal.App.2d 919, 927 [185 P.2d 364]; *Marsh* v. *Smith,* 46 Cal.App. 692, 699-700 [189 P. 1037].) The determination of the trial court that Henry is an involuntary trustee who became such through his own fault, which determination is supported by substantial evidence, precludes him from obtaining reimbursement for expenditures voluntarily paid by him while he was asserting his claim adverse to the beneficiaries.

■ We are thus brought to a consideration of the amount of the money judgment. The trial court found on this point as follows: "The Court finds that the reasonable rental value of the real property commonly known as Tulare #(2) for the year 1952 was the sum of $4,000.00 net to the lessor and that thereafter said rental value increased ten (10%) percent per year.

"The Court finds that the plaintiffs' share of the rent up to March 1, 1964, from Tulare #(2) is the sum of $23,150.00."

As has been noted, judgment was awarded in that sum against both Henry and Emily. The method by which the trial judge reached that sum is not shown. The plaintiffs state in their brief and the defendants do not deny that the

trial court allowed one-sixth of the net rental value, representing the proportionate trust res held by Henry from the date of acquisition of Tulare No. 2 until the March 1958 judgment, and one-third of the net rental value, representing the proportionate trust res held by both Henry and Emily for the period from the 1958 judgment to the date of the judgment in this action, i.e., March 1, 1964. Under the views expressed herein the money award should be assessed against Henry alone and should be calculated upon one-sixth of the reasonable net rental value from the date of acquisition of the property to the date of the judgment in this action. Since by simple calculation we do not reach the same result as did the trial court, the amount of the money award should be determined by the trial judge.

The judgment as to Henry is affirmed, with instructions to the trial court to reframe its findings of fact and conclusions of law in accordance with the views herein expressed and to enter judgment in favor of Emily and against the plaintiffs and in favor of the plaintiffs and against Henry, declaring that Henry holds in trust for the plaintiffs an undivided one-sixth interest in Tulare No. 2, and awarding to the plaintiffs a sum equal to one-sixth of the reasonable net rental value of Tulare No. 2, said money award to bear interest from March 1, 1964. All other orders contained in the judgment and not affected by our conclusions herein are affirmed.

Conley, P. J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied January 31, 1966. Stone, J., did not participate therein.